### SAMUEL MAGEE *vs.* THOMAS HOLLAND.

1. A parent must show some loss of services to enable him to maintain an action on the case for taking his infant children out of his possession.

2. Loss of services being shown as a foundation for the action, the jury may look at all the circumstances of the case, and give exemplary damages to compensate the plaintiff for the injury done to his feelings and to prevent similar abuses.

3. The right of the father to the possession of his children, is paramount to that of the mother. It is, therefore, no defence that the defendants acted in conjunction with or in aid of her.

4. Evidence that the children were well taken care of and educated, after they were removed out of the state, held inadmissible.

This was an action of trespass on the case, brought in the Circuit Court of the County of Morris, and was tried before Justice Elmer, at January Term, 1857.

The declaration claimed damages for forcibly, maliciously, and wrongfully seizing, taking, and carrying away the three infant children and servants of the plaintiff, and depriving him of their services, company, and affection for a long space of time, and obliging him to

Magee v. Holland.

expend large sums of money in endeavoring to find and recover possession of them. The plea was, not guilty.

It was proved that the plaintiff's second wife, who was the sister of the defendant, bore him three children, and when the youngest was about a year old, she voluntarily left him and the children, and went to New York. About two years after this, in September, 1850, when the oldest child, a girl, was about six years old, the next, a boy, over four, and the youngest, a girl, nearly three, the defendant, with his sister, the plaintiff's wife, came to the town where the plaintiff resided, in Morris county, in a carriage hired by the defendant for the purpose, and forcibly seized the three children and drove off with them rapidly, carrying them out of the state into the city of New York, where they had ever since remained. The children had been left by their father at the house of his brother, near to his own residence, where they had been taken to the funeral of his mother, in the care of their half-sister, the plaintiff being himself attending the funeral services at the church in the same village. The children, or some of them, were much frightened, and cried. Information being sent of the transaction to the father, he, with some of his friends, immediately left the church, and, as soon as possible, pursued the defendant, but arrived at Jersey City just after he had crossed the river with the children. Various efforts were made to procure the return of the children without success. Evidence was given, on both sides, as to the manner in which the children were living with their father, and their condition when taken away. Evidence was also given of sundry small services by the children for their father. The defendants offered to prove that, after the children were removed to New York, they had been well taken care of and educated by their mother; but this evidence being objected to as irrelevant, was overruled by the judge, to which ruling the counsel of defendant excepted.

The case having been summed up by counsel on both

sides, the following charge was given by the judge to the jury :

"This is an action by a father, for taking away his children, and thus depriving him of their services and company. By the law of the land, a father, unless deprived of it by appropriate legal proceedings, has a right, against all the world, to the services and the company of his legitimate children ; and no one, not even his wife, the mother of the children, has a right to deprive him of them. It is the duty of the wife to live with her husband, and to take care of their children. She has no right to leave him and take away the children, unless compelled to do so by ill usage. It is, therefore, no legal defence to this action that the defendant was acting in conjunction with, or in aid of his sister, the wife of the plaintiff and the mother of the children. I am, however, clearly of opinion that, as you have a right to look at all the circumstances attending the taking of the children, and apportion the damages you give to their aggravation, so you have a right to consider the fact of the mother's participation as entitled to mitigate the damages. Had these three young children been taken away from the care of their mother, as well as of their father, that circumstance would have aggravated the offence. The absence, therefore, of this circumstance, in the opinion of the court, tends to mitigate, to some extent, the injury, although it does not justify the act.

This action, in my opinion, might be sustained without any proof of loss of service ; but if loss of service is necessary, no particular amount of service need be proved. If the children were capable of carrying to the father a simple cup of water, as it is proved they did, that was a service to which he was entitled, and of which no one had a right to deprive him. Every father blessed with that natural affection which God, in His infinite wisdom and goodness, has implanted in the heart of man, that the care of his offspring may be a pleasure, rather than a

Magee v. Holland.

burthen, knows the value of those little offices which the young prattler can offer with filial affection.

That the defendant did actively participate in carrying off the three children named in the plaintiff's declaration and by the witnesses, seems too well established to be doubted. If he did not originate the plan, he was active in contriving all the means of seizing them by force, and carrying them out of the state. It was a high-handed outrage, and deserves to be met by a stern rebuke.

In considering the damages you will give, you are not confined to the mere money value of the children's services. Besides this, you have a right to compensate the plaintiff for whatever expenses he necessarily incurred in endeavoring to trace and obtain possession of his children, not expenses incurred in prosecuting other parties. This defendant is not responsible for that. If the plaintiff expended money in prosecuting parties who were innocent, or not proved to be guilty, that was his own fault or misfortune. All that can properly be given for expenses will be for expenses necessarily arising out of the defendant's acts.

You have a right to compensate the plaintiff, so far as damages can compensate for the injury done to his feelings, as a father, by losing his children. And I think you may also look at all the circumstances attending the taking of these children out of the possession of the father and out of the state, and give such damages as you may deem reasonable to vindicate the rights of the plaintiff and to prevent similar abuses.

The evidence offered by the defendant, that the children were well educated after they were carried away, and that the plaintiff had become poor about the time they were taken, was overruled, because these circumstances ought not to have any weight in determining your verdict. The action of the plaintiff is not for injury to the children, but for the injury done to himself. The defendant helped to take his children away, and the consequence has been

that they have stayed away, and thus he has lost their services and their company. It is for the act of taking them away, and the consequential result to the plaintiff, that the action is brought, and for which damages are to be given. The situation of. the plaintiff's family, and his mode of living, and the condition of the children, have been given in evidence, to aid you in determining the extent of the injury to him, and to enable you to arrive at a proper result in regard to his damages. The children, it appears, have never returned to the state. But there is no direct evidence that the defendant took any steps to detain them, or to prevent the plaintiff from finding them. His responsibility is for taking them, and not for detaining them. It is no proper ground of damages that heavy damages may bring them back. The necessary and probable consequences of taking them out of the custody and care of the father, and into another state, you have a right to consider and estimate. One of the consequences must have. been, in the nature of things, to alienate their affections and make them, to a considerable extent, strangers to him who is entitled to their affection and reverence.

Something has been said by the counsel of the plaintiff, about satisfying public opinion in this case. It is my duty to remind you, that if you have heard anything about the matters involved in this suit outside of the court-house, you must lay it wholly aside, and remember that you have sworn to give a true verdict, according to the evidence. Admit no prejudices against either of the parties to this suit. Keep in mind that your duty is to look at the case as it has been disclosed by the evidence here, and if you think the case calls for damages, award what in your best judgment will be fair compensation to the plaintiff and will properly vindicate the laws of the land. It is no part of the duty of the court to give any opinion as to the amount of damages you ought to give. I will only remark that the legitimate purposes of this suit will be

better accomplished by moderate, than by extravagant damages."

A verdict was rendered for the plaintiff, and his damages assessed at the sum of eighteen hundred dollars. On motion for the defendant, a rule to show cause why there should not be a new trial was allowed by the Circuit Court, and the case certified to this court for its advisory opinion upon the following questions :

1. Was the plaintiff entitled to maintain his action without any proof of actual loss of the services of his children ; or, if loss of services was necessary to be proved, was enough shown to entitle him to maintain his action ?

2. Did the court err in rejecting the evidence offered for defendant in regard to the education of his children after they had been taken to New York ?

3. Did the court err in charging the jury that it was no legal defence to the action that the defendant acted in conjunction with or in aid of the mother of the children ?

4. Did the court err in directing the jury as to the rule of damages applicable to the case ?

The case was argued before the CHIEF JUSTICE, and Justices ELMER, POTTS, and HAINES.

*Little*, for defendants, insisted—1. The judge was wrong in charging that the action required no proof of valuable services by the children, and if such proof was necessary, that there was sufficient proof of that fact. The loss of service is the *gist* of the action, and there must be positive proof of it. In cases of seduction, this positive proof has been sometimes dispensed with, but that case is considered as *sui generis*. 4 *Harr.* 31 ; 4 *Comstock* 38 ; 24 *Wend.* 430 ; 4 *Denio* 461 ; 4 *Barn. & Cress.* 660. The mother in fact took them, and in such a case only the actual service lost is properly recoverable. In cases of separation, the mother has a natural right to the care of young children. 19 *Johns.* 192, 209 ; *Bishop on Mar. and Div.* 639.

There is no absolute right of the father, in preference to the mother. Courts will always act for the benefit of the children. 2 *Zab.* 286; *Bishop* 633, 643, 644; 2 *Kent* 194, and *note.* Parties lived separate, and no proof was or could be given who was in fault. The wife may have been driven away by his ill-treatment. And see *Rising* v. *Dodge,* 2 *Duer* 48.

2. The charge that the jury might give exemplary damages, was wrong. Nothing but the actual damages proved were legal in such a case as this. I do not insist that vindictive damages cannot be given in any case; but I insist that they are only allowable in cases of fraud, wantonness, malice, or oppression, which are all wanting in this case. 13 *Johns.* 151 and 575; 3 *Zab.* 347; *Sedgw.* 35, 38. No malice, or any of the other ingredients, can be inferred against a mother taking away her own children. There was no concealment. In an action of trespass, perhaps the rule might be different, but here was no trespass on the defendant's property. If the time chosen be considered unfit, that does not make the act itself wanton, malicious, or oppressive. If the defendant devised the plan, that does not make the act itself malicious. It was, at most, only the breach of an arbitrary rule of law. To say that the wife ought to have lived with her husband, is to assume that she was wrong. The damages were excessive, and this shows that the rule laid down to the jury was erroneous.

3. The court erred in overruling the evidence that the children were well taken care of and educated by their mother. This was, at all events, evidence to show that there was no malice, and that it was not a proper case for exemplary damages.

*Vanatta,* for the plaintiff, insisted—1. No service was necessary to be shown. The father has a right to the society and affection of his children, and to educate them in accordance with his own views of duty as well as to

Magee v. Holland.

their services, and this action is for a violation of these rights. 2 *Kent* 193–4; 1 *Bl. Com.* 453; *Reeves' Dom. R.* 290–1; *Bishop* 633, 643; 1 *Story's Eq.*, § 1343; 3 *Hill* 399; 5 *East* 220; 22 *E. L. & E. R.* 395.

In actions for *crim. con.* there needs no loss of service. 7 *Carr. & P.* 198; 1 *Saund. P. & E.* 875; *Andrews* 310; *Siderfin* 387.

Removing a child from its parent is indictable. *Nix. Dig.* 172, § 62. And the law is that any person specially injured by a misdemeanor is entitled to an action for damages. 4 *Bl. Com.* 6; 15 *Mass.* 336; 3 *Zab.* 28. A testamentary guardian is entitled to an action. *Nix. Dig.* 875, § 9; *a fortiori*, a parent may sue for the like cause. The case of *Hall* v. *Hollander*, 4 *B. & C.* 660, so much relied on, was for a personal injury, for which the child itself could sue. See 2 *Cush.* 317; 1 *Hal.* 322; 21 *Wend.* 615.

The case in 2 *Duer* 42, was correctly decided on the facts; the plaintiff had abandoned his children. So 2 *Metc.* 99; 2 *Kent* 203. The principle is that for every wrong there is a remedy. 3 *Ch. Bl.* 140, *note* 27.

At all events, actual service was amply proved. And see 7 *Watts* 302; 1 *Espin.* 217; 1 *Hal.* 329.

2. Exemplary damages were called for. 2 *Greenl. Ev.*, § 267, 272; 5 *Taunt.* 442; 7 *Carr & P.* 198.

3. The evidence, as the children's treatment in New York, was rightly excluded. This is not in issue, and had no tendency to rebut malice.

4. The mother's participation in the act was no justification and no palliation. I submit the court erred in allowing it to go in mitigation. 4 *Binn.* 487; 4 *Humph.* 523; 2 *Hill's S. C. R.* 363; 2 *South.* 447; 9 *Moore* 278; 5 *East* 24; 1 *Dow. P. Cases* 81; 4 *Adol. & E.* 624; 3 *Zab.* 286; 6 *Ves., Jr.*, 283; 10 *Ves.* 52; 1 *Sim.* 178.

The opinion of the court was delivered by

ELMER, J. Before the abolition of the tenure in chivalry, it was held, as a doctrine of the common law, that the ab-

duction of his heir, was an injury for which the father might maintain an action, and recover, by way of damages, the value of his right of marriage. Reeves, in his work on the Domestic Relations, 293, suggests that inasmuch as all the children are heirs in this country, the action may be sustained for taking away any of them. But the damages for the abduction of the heir were restricted to the value of the marriage; and the father being no longer entitled to any such value, the taking away and marrying his heir does him no injury for which a civil action will lie upon that principle. 5 *Coke* 108; 9 *Coke* 113; 10 *Coke* 130; *Cro. Eliz.* 55; *Ib.* 849. In the case of *Barham* v. *Dennis*, *Cro. El.* 770, the declaration was in trespass, by a father for taking and imprisoning his daughter, without alleging her to be his heir or any loss of service, and damages were assessed for the taking and imprisoning separately. Three of the judges were of opinion that the action could not be sustained. Glanville held that " the father hath an interest in every of his children, to educate them and provide for them, and he hath his comfort by them; wherefore it is not reasonable that any should take them from him, and to do him such an injury, but that he should have his remedy to punish it." The case was thereupon adjourned, and was afterwards settled by arbitrament. 3 *Blackstone's Com.* 141, gives the weight of his authority to the opinion of Glanville, and I think it is to be regretted that this reasonable doctrine did not prevail. There does not seem, however, to have been any case in England or America, where a father has recovered damages for the abduction of his children, the uniform language of the cases being that he can only sustain his action where there has been actually or constructively a loss of service. In the case of *Hall* v. *Hollander*, 4 *Bar. & Cress.* 660, the Court of King's Bench, in England, sustained the ruling of the majority of the judges in Barham *v.* Dennis as clear law. And subsequently, in the case of *Grinnell* v. *Wells*, 7 *Man. & G.* 1033, the Court of Common Pleas held the same doctrine.

The case of Hall *v.* Hollander has been somewhat questioned in some of the American cases, but the general doctrine has been substantially adhered to. In the case of *Whitney* v. *Hitchcock*, 4 *Denio* 461, the damages in an action for assault and battery of the child were restricted to the actual loss of service, mainly on the ground that the child could also sue for the same act. In *Dennis* v. *Clark*, 2 *Cush.* 347, it was held that if a legitimate infant child, a member of his father's household, and too young to be capable of rendering any service to his father, is wounded or otherwise injured by a third person, and the father is thereby necessarily put to trouble and expense in the care and cure of the child, he may maintain an action against such person for an indemnity. The same decision was made in the case of *Durden* v. *Barnett*, 7 *Ala.* 169. In the case of *Wodel* v. *Coggeshall*, 2 *Metc.* 89, the judge instructed the jury that, by law, a father may maintain an action against another for seducing away a minor son from his custody, protection and service; but it appearing that the son was not under the care and custody of the father, and was not taken from his employment, it was held that there could be no recovery. And see *Steels* v. *Thacher*, *Ware* 91; *Ford* v. *Monroe*, 20 *Wend.* 210; *Cowden* v. *Wright*, 24 *Wend.* 429; *Plummer* v. *Webb.* 4 *Mason* 380; *Wilt* v. *Vickers*, 8 *Watts* 227; *Rising* v. *Dodge*, 2 *Duer* 48.

The action for debauching and seducing a daughter is the most ordinary action by a parent for an injury to his child, and the remedy in this case has been carried as far, if not farther, than in any other. Loss of service is held in all the cases to be an indispensable condition upon which the action must be maintained. Service, however, will in many cases be presumed, and the weight of authority appears to be, that if the child is a minor, and the parent has not relinquished or lost his right to claim her services, it is not necessary that she shall reside at home. This is the recognized doctrine in this state. *Dean* v. *Peel*,

5 *East* 45; *Davis* v. *Williams*, 10 *Q. B.* 725; *Blaymire* v. *Haley*, 6 *M. & W.* 54; *Griffiths* v. *Teetgen*, 22 *E. L. & E. R.* 371; *Martin* v. *Payne*, 9 *Johns.* 387; *Hewitt* v. *Prim*, 21 *Wend.* 79; *Nickleson* v. *Stryker*, 10 *Johns.* 115; *Bartley* v. *Richtmyer*, 4 *Comst.* 38; *Emery* v. *Gowen*, 4 *Greenl.* 33; *Hornketh* v. *Barr*, 8 *Serg. & R.* 36; *Roberts* v. *Connelly*, 14 *Ala.* 235; *George* v. *Van Horn*, 9 *Barb.* 523; *Vossel* v. *Cole*, 10 *Misso.* 634; *Pray* v. *Gorham*, 31 *Maine* 240; *Vanhorn* v: *Freeman*, 1 *Hal.* 322; *Coon* v. *Moffett*, *Penn.* 583; *Taylor* v. *Vanderveer*, 4 *Harr.* 22.

Deferring to these authorities, it must be held, I think, as the well-established law, which, however unreasonable originally, it is too late now to disturb, that a parent's right of action for the abduction or injury of his children must be founded on the loss of their services, or for actual expenses and trouble in curing them, while minors under his roof. The charge that the action might be sustained without any proof of loss of service, was, therefore, perhaps, erroneous. But there was ample proof of such loss. The jury had a right to infer it from the fact that they were minors of from the age of three to six, residing in their father's family. Acts of service were also sworn to. The children were forcibly taken out of the state, and up to the time of the trial, more than six years after the occurrence, had not returned, so that there was good reason to believe the father would lose the value of their services during the whole time of their minority; and this being a natural and probable result of the defendant's act, the jury had a right to take it into consideration. The plaintiff naturally and properly pursued them, and thus incurred much expense and trouble. In the case of Hall *v.* Hollander, before referred to, which was an action for injuring the plaintiff's son, of the age of two and a half years, the expense attending whose cure was provided for by the defendant, the judge who tried the cause offered to submit the question to the jury, whether the child was capable of performing services to which any value could

Magee v. Holland.

be attached. The right of the plaintiff to recover the necessary expenditure he incurred in pursuing the defendant, if he had a right to recover at all, was not questioned on the trial nor in this court.

There having been a good foundation shown for the action upon the strictest principles of law, was the rule of damages laid down at the trial erroneous? Besides the loss of service and the actual and necessary expense of the pursuit, the jury were instructed that they had a right to compensate the plaintiff, so far as damages could compensate, for the injury done to his feelings; and that they might look at all the circumstances attending the taking of the children out of the possession of the father and out of the state, and give such damages as they should deem reasonable to vindicate the rights of the plaintiff and to prevent similar abuses. This was in accordance with the law, as stated by Ch. Just. Abbott, in *Hall* v. *Hollander*, who said that when the foundation of loss of service existed, courts of justice have allowed all the circumstances of the case to be taken in consideration, with a view to the calculation of the damages. It was also in accordance with the opinion of the Supreme Court of the United States, in the case of *Day* v. *Woodworth*, 13 *How.* 371, that it is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence, rather than the measure of compensation to the plaintiff.

The right of the jury to consider all the circumstances of the case, and to award exemplary damages, necessarily drew with it the right to consider the injury done to the feelings of the father, as well as all the other circumstances of aggravation, It was very different from a case of injury arising from an act of mere negligence. The circumstances of aggravation were, in my opinion, of peculiar enormity, and high as the damages seem, I should

not have been willing to interfere with the verdict, had the question been submitted to this court whether they ought to be considered so excessive as to warrant a new trial on that ground.

It was not insisted, on behalf of the defendant, that exemplary damages cannot be awarded in any case, that principle being too well established in this state to admit of question. The argument urged was, that to justify such damages, there must be fraud, wantonness, malice, or oppression, and that all these ingredients were wanting in this case. I am not willing to concede that, in an action of this kind, the jury might not properly look at all the circumstances, and apportion their damages to the actual wrong done to the plaintiff's feelings and paternal affection and rights without any positive proof of malice or oppression. But these were not wanting. There was some discrepancy in the testimony; but the decided preponderance was that the children were living comfortably and happily with their father. The mother had deserted him, without assigning any reason, leaving her three children to his care, one of them then an infant only a year old. She was not denied access to them, and did not appear to have asked permission to remove them. They were not only illegally seized in a violent and alarming manner, and carried out of the reach of the laws of this state, but this was done at a time and under circumstances peculiarly calculated to harass and afflict the plaintiff; so that the jury were fully warranted in considering the act as wanton and oppressive, if it was not positively malicious. To have permitted him thus to have lost the services of his children for many years, if not during their minority, and to be harassed and wounded in his tenderest feelings, and to give him for such wrongs but nominal damages, would have been a mockery of justice. Admitting that the true rule would be to discard punitive damages, allowing only such as would be compensation for the actual injury, the extent of the injury depended very much upon the man-

Magee v. Holland.

ner it was inflicted. The attendant circumstances and natural results, including the facts which occur and grow out of the injury up to the day, of the verdict, affect the damages, and are admissible in evidence ; and where an evil intent has manifested itself in acts and circumstances accompanying the principal transaction they constitute parts of the injury. 2 *Greenl. Ev.*, §§ 268, 272.

Much stress was laid, by the counsel for the defendant, on the fact that he acted in aid of and in conjunction with his sister, the mother of the children. This circumstance was submitted to the jury, as entitled to be considered in mitigation of the damages. Further than this it could not go. The right of the father was clearly paramount to that of the mother ; and there was no room to doubt that the defendant purposely aided in taking the children against the father's consent. Although in cases where a child is before the court by virtue of a *habeas corpus* they will exercise a discretion, and permit the child, if of tender years, to remain under the care of the mother, yet if it is actually in the custody of the father, so absolute is his right considered, that they will not interfere to remove it, and it is strongly doubted whether they have the power to do it. *State* v. *Stigall*, 2 *Zab.* 286 ; *Hackwell's case*, 22 *E. L. & E. R.* 395.

As to the refusal to admit evidence showing that the children had been well provided for and educated by their mother in New York, I think it was right. No damages were claimed for any injury done to the children after their removal. The evidence was not offered in mitigation of the aggravating circumstances attending the taking of them away, and if it had been, had no tendency to do so.

I am therefore of opinion that the Circuit Court should be advised to refuse a new trial.

Cited *in Baird* v. *Baird & Torrey*, 6 *C. E. Gr.* 394.