166 N.J. Super. 579 (1979)
400 A.2d 147
BETTY FRIEL ET AL., PLAINTIFFS,
v.
VINELAND OBSTETRICAL AND GYNECOLOGICAL PROFESSIONAL ASSOCIATION ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 26, 1979.
*581 Mr. Nelson C. Johnson for plaintiff (Messrs. Bertman, Johnson & Sahli, attorneys).
Mr. Jeffery A. April for defendant Newcomb Hospital (Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys).
Mr. A. Michael Barker for defendants Vineland Obstetrical & Gynecological Professional Association, etc. (Messrs. Horn, Kaplan, Goldberg & Gorny, attorneys).
*582 MILLER, J.S.C.
May a mother whose child is tortiously caused to be prematurely delivered and who herself sustained a compensable injury therein, include as damages not only those proximately related to her own injuries but for her fright, anxiety and shock sustained by the premature delivery and uncertainty as to the child's normality during the formative years of development to the stage where educational testing may be had?
This case come before the court on defendants' motions for summary judgment. Plaintiffs sued alleging medical malpractice in obstetrical care provided to a mother and daughter. Defendants argue that because the infant has apparently recovered from her injuries, plaintiffs' complaint must be dismissed by way of summary judgment. In order to dispose of this motion it is necessary to consider the elements of damage presented in such cases. For the reasons stated herein this court holds that, at least in cases of alleged obstetrical malpractice, anxiety of the parents of a child living but potentially brain damaged is includable as an element of damage. Thus, for the above reason and other reasons set forth below, defendants' motions are denied.
The factual events of this case began on April 30, 1976, when plaintiff Betty Friel was in her thirty-first week of pregnancy. She noticed vaginal bleeding on that date. She called defendant doctors, who were treating her through the course of her pregnancy, and was advised to take aspirin and a shot of whiskey. A few days later an office visit occurred due to plaintiff's continued bleeding and cramps. The doctor diagnosed a bladder infection and prescribed medication for that suspected ailment. By May 7 plaintiff's vaginal bleeding had become quite heavy and her cramps and pain markedly increased. She went to defendant Newcomb Hospital where the doctor examined her, reaffirmd his diagnosis, and advised plaintiff to go home. Plaintiff William Friel insisted on a second examination. A second member of the doctors' group examined her, agreed with his colleague's diagnosis, and plaintiffs were sent home. On May 9 Betty Friel became violently *583 ill, suffered convulsions and continued to bleed. In a nearly hysterical state, she was admitted to the hospital at about 8 P.M. that evening. She received medication, including Demerol and intravenous oxytocin. Plaintiffs allege that no one checked on her regularly after she was in the labor room. At 10 P.M. a third member of the defendant doctors' group examined plaintiff and indicated that it would be some time before the baby was born and left. At 10:26 P.M. the infant plaintiff was born. No anesthesia was administered, no epesiotomy was done, and plaintiffs allege that no member of defendant doctors' group was present when Betty Friel delivered the child. The final diagnosis was that Betty Friel had suffered an abruptio placenta.
The infant plaintiff, Amanda Beth, was three pounds, six ounces at birth. She was cyanotic, suffered apnea, and later tests showed intracranial hemorrhaging and central nervous system difficulties. Amanda spent the first 5 1/2 weeks of her life in a Pennsylvania hospital, came home one week, and was rushed back again after respiratory failure.

Expert Testimony
Defendant hospital argues that plaintiffs' cause of action against it must be dismissed for failure to produce an expert. E.g., Carbone v. Warburton, 11 N.J. 418 (1953); Toy v. Rickert, 53 N.J. Super. 27 (App. Div. 1958). The hospital argued that even assuming that no one attended plaintiff, that no one checked the medication and plaintiff's condition while receiving medication, expert testimony must be required to show that the medication was harmful and that it is beyond the common knowledge of jurors how often a person should be checked or attended upon admission to a hospital and while receiving medication. Plaintiff's expert, however, clearly addresses that issue in his report:
The contribution of the intravenous oxytocin stimulation to the injuries this infant suffered is not clear, inasmuch as there are no Nurse's Notes contained in this record. It is considered customary *584 practice that during intravenous oxytocin stimulation the following biologic parameters are carefully monitored every ten minutes; the blood pressure, the rate of flow of oxytocin, the frequency and intensity of the uterine contractions and the fetal heart rate. We have no record of these observations having been made and that omission, in itself, is a departure from customary standards.
Thus, assuming all that defendant assumes, plaintiff in fact does have an expert to testify to the standard of care and deviation therefrom. Whether or not a nurse attended plaintiff during this period is obviously a material factual issue that must not be disposed of on summary judgment. R. 4:46-2; e.g., Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
Thus, in light of plaintiff's expert report, further discussion as to whether the argument of "common knowledge" doctrine applies to plaintiffs' claims regarding negligent administration of "harmful" medications is unnecessary. However, insofar as plaintiffs allege an utter lack of attendance, particularly at the time the baby was delivered, the question of malpractice in that regard would appear to be within the province of the jury of laymen, depending upon the proofs submitted. "There are basic aspects of childbirth procedure within the common knowledge of the laity." Lewis v. Read, 80 N.J. Super. 148, 170 (App. Div. 1963), certif. granted 41 N.J. 121 (1963). Attendance of a patient in labor at or near the moment of giving birth would seem to be an aspect particularly within that knowledge.
For the above reasons, defendant Newcomb Hospital's motion for summary judgment on the basis of a failure to produce an expert and the nonapplicability of the "common knowledge" doctrine is denied on the present state of discovery.

Damages
Defendants' argument that there were no actionable damages in this case is premised on a letter written by Amanda's physician, Dr. Boggs, on August 16, 1977. Amanda *585 was then 16 months old. Dr. Boggs characterized her condition as follows: "* * * she is an active bright young lady who has equalled or surpassed her five older siblings in attaining her motor landmarks to date." Defendants assert that since the child has apparently recovered, according to Dr. Boggs' letter, the damage element of plaintiffs case is lacking and must be dismissed. They also argue that due to Amanda's prematurity, any attempt to establish a causal connection between defendants' acts and/or omissions and Amanda's injuries is merely speculative.
Causation problems in cases involving prenatal injuries have been noted by the Supreme Court in Smith v. Brennan, 31 N.J. 353 (1960). The court noted that many types of cases present causation problems, but that "the mere difficulty of proving a fact is not a very good reason for blocking all attempts to prove it." Id. at 365. See also, Knutsen v. Brown, 93 N.J. Super. 522, 536 (Law Div. 1966), aff'd 96 N.J. Super. 229 (App. Div. 1967).
Furthermore, in the reports filed with this motion, plaintiffs' expert, Dr. Nathanson, explicitly recognizes the problem that prematurity plays in this case. His report of June 9, 1977 states: "* * * premature infants are occasionally known to suffer intracranial hemorrhage without apparent cause. There would seem sufficient reasons in this case for traumas to the head to produce such injury. I refer specifically to the use of intravenous oxytocin, the omission of epesiotomy, etc." Where expert testimony will be involved, courts should be particularly cautious in granting summary judgment. Ruvolo v. American Cas. Co., 39 N.J. 490, 500 (1963).
Defendants' argument that since Amanda has apparently recovered there are no actionable damages ignores the immediate injuries that Amanda may have suffered due to defendants' malpractice. Her pain and suffering during the lengthy hospitalizations subsequent to her birth are compensable. Doud v. Newark Housing Auth., 75 N.J. Super. 340, 346 (App. Div. 1962). Pain is a subjective reality. This *586 infant may be too young to testify that reality as felt by her, but a jury can determine from her parents' and physicians' testimony of her injuries and her physical actions and responses what is "fair and reasonable" compensation for her suffering. Lewis v. Read, supra, 80 N.J. Super. at 173-174. See generally, Botta v. Brunner, 26 N.J. 82 (1958).
Even if this court were inclined to accept defendants' argument, the facts would not permit it. From Dr. Boggs' report, read in conjunction with Dr. Nathanson's report, a doubt arises as to whether Amanda has effected a complete recovery. Dr. Boggs recommends a repeat electroencephalogram, and, if it is normal, discontinuance of medication. Dr. Nathanson concludes that plaintiff probably began suffering abruptio placenta with consequent blood loss on April 30, 1978, and that if the condition prevails for a significant period of time, fetal hypoxia with brain damage may result. Where a doubt exists, it cannot be said that a movant for summary judgment has established his case or that there is no genuine issue of material fact. Ruvolo v. American Cas. Co., supra, 39 N.J. at 499.
The fundamental flaw in defendants' argument is that it completely ignores the gravamen of counts I and II of the complaint: the delay in treatment causing injury to the mother and the per quod claim of the father. Even if plaintiffs prove no injury consequent to the delay in diagnosis and treatment of her condition, Betty Friel is entitled to be compensated for pain and suffering during the delay if proven and causally connected to defendants' acts and omissions. Ciluffo v. Middlesex General Hosp., 146 N.J. Super. 476, 481 (App. Div. 1977). Of course, her husband may recover with respect to her injuries those expenses incurred by him for her care and treatment, and for the loss of her services, society and comfort. If he proves that as a proximate result of the injuries he will continue to suffer losses of the kind above, he is entitled to compensation for such anticipated future loss. Schuttler v. Reinhardt, 17 N.J. Super. 480, 486 (App. Div. 1952).
*587 It is conceded that no definite answer can be had as to whether Amanda has been adversely affected by the events of her birth until she arrives at a chronological age where educational and psychiatric testing can be had. This age is estimated to be between three and five years, and until that time her mother must endure the uncertainty of not knowing whether she has a normal child or not. It is this uncertainty and anxiety for which damages are sought.
The claim for the mother's mental anguish and anxiety related to the condition of the baby is the most interesting question in this case. If negligence in treatment from April 30 to May 9 be shown, it is clear that any proven emotional upset caused by anxiety over possible harm to the unborn child during that period is compensable. Carter v. Public Service Coord. Transport, 47 N.J. Super. 379, 390 (App. Div. 1957). If injury to the baby is proven and connected to defendants' acts and omissions, expenses of treatment and care are recoverable consequential damages. E.g., Smith v. Brennan, supra, 31 N.J. at 368, and Lewis v. Read, supra, 80 N.J. Super. at 173. If permanent injury is proven such that reasonable men could find that there will be a resultant loss of services of the child, or if a loss of past services is proven, such loss of service is also an element of damage. Brennan v. Biber, 93 N.J. Super. 351, 364 (Law Div. 1966), aff'd o.b. 99 N.J. Super. 247 (App. Div. 1968).
In a footnote in Brennan the trial court said that "in negligence actions * * * the parent may not recover for injury to his feelings or mental distress." 93 N.J. Super. at 365, n. 6. Among the cases relied upon is Magee v. Holland, 27 N.J.L. 86 (Sup. Ct. 1858). Magee was a cause of action for abduction of children wherein it was held that if loss of services was proven, then injury to feelings was recoverable as exemplary damages. The other cases relied on were Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157 (App. Div. 1953), a conspiracy to defraud by false pretenses claim, and Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956), an action for seduction brought by a *588 father for loss of services of his pregnant, adult daughter. The court in Brennan held in part that there was no right to recover for loss of companionship of children injured in an automobile accident. All of these cases are distinguishable.
However, more direct authority can be found for the proposition that no cause of action lies for a parent's distress at the condition of his or her child born with a deformity or injury due to prenatal injuries. Smith v. Brennan, supra, 31 N.J. at 364, cites Prescott v. Robinson, 74 N.H. 460, 463, 69 A. 522, 524 (Sup. Ct. 1908), approvingly for the proposition that the mother has no cause of action for pain, suffering, and incapacity of a baby as if it were a part of her, and that the child has its own right of action as a separate entity for its injuries. Prescott v. Robinson also holds that there is no cause of action for mental distress at the deformity of a child. Ibid. A similar holding is found in Gagnon v. Rhode Island Co., 40 R.I. 473, 101 A. 104 (Sup. Ct. 1917). However, the accepted rule that anxiety before birth is compensable was extended in that case:
Furthermore, although she should not be given damages for the child's misfortune during life, resulting from an injury to the foetus, nor for her own [and] subsequent mental distress during the lifetime of the child occasioned by its deformity, the mother is entitled to damages for her distress and disappointment at the time of birth because through defendant's negligence she has been deprived of the right and the satisfaction of bearing a sound child, if it be found that the child's deformity is due to the injury she received through the defendant's negligence. [40 R.I. at 474, 101 A. [104] at 105; emphasis supplied]
See generally, Annotations, 145 A.L.R. 1104, 1109 (1943), 40 A.L.R.3d 1222, 1254-1255 (1971), 32 A.L.R.2d 1060, 1078 (1953), supplementing 37 A.L.R. 11, 49 (1925).
The greatest extension of the rule as to anxiety is found in Fink v. Dixon, 46 Wash.2d 794, 285 P.2d 447 (Sup. Ct. 1955), which permitted the jury to consider plaintiff mother's *589 worry and anxiety because of the baby's frail and underweight condition up to the time of trial in an action for injuries that allegedly caused the premature birth of the baby. The baby was nine months old at the time of trial. The case also allowed extraordinary expenses, defined as those over and above the expenses incurred in the care of a normal full-term baby.
It must be remembered that this is not simply a prenatal injury case. A combination of the delay in treatment for the abruptio placenta, medication given during labor, unattended delivery and failure to perform an epesiotomy could have coalesced to cause the child's injuries or poor condition that caused her mother anxiety leading up to the birth, shock and distress at the baby's condition at birth, and continuing anxiety and distress over her hospitalization and potential brain damage. Thus, the instant case fits no defined category. It is not a case of shock upon seeing the condition of an offspring after a fatal accident, which the parent did not witness, for which no recovery is available in this State. Burd v. Vercruyssen, 142 N.J. Super. 344 (App. Div. 1976), certif. denied 72 N.J. 459 (1976). It is not a case of fright without impact and ensuing emotional disturbance leading to physical injury which is now actionable in this State. Falzone v. Busch, 45 N.J. 559 (1965). It is unlike injuries to a child resulting from an auto accident in which the child is a passenger, Brennan v. Biber, supra, nor is it strictly a case of prenatal injuries. Smith v. Brennan, supra. It is unclear what position has been taken in this State with regard to anxiety caused by the birth of a brain-damaged child, which brain damage is the result of both prenatal injuries and injuries incurred during birth, because the issue of the parents' recovery for anxiety was not presented in Smith v. Brennan, supra.
Greenberg v. Stanley, 51 N.J. Super. 90 (App. Div. 1958), mod. on other grounds, 30 N.J. 485 (1959), points the direction which courts should take in cases of this kind. In Greenberg plaintiff mother was injured and her five-month-old *590 daughter killed when a car careened onto the sidewalk and struck them. The court held that the sudden nature of the accident causing the mother's injuries and the emotional trauma over the simultaneous fatal injury to her daughter were so intertwined that she could recover for her subsequent emotional disturbance and psychoneuroses without attempting to separate the sources of her disturbance. Id. at 105-107.
This is a case like Greenberg in that there is direct impact on mother and child by the acts and omissions of defendants. Id. at 106. However, unlike Greenberg, the anxiety does not end for these plaintiffs. Thus, Greenberg does not offer the entire solution to the damage issue in cases of this kind.
In reviewing the cases disallowing damages for mental distress for parents witnessing injuries to their children, the overriding theory for disallowing recovery is remoteness. E.g., Prescott v. Robinson, supra; 45 A.L.R., supra at 1109. It is also proclaimed that anxiety at the condition of a child is too speculative for a jury to estimate fair compensation. Prescott v. Robinson, supra, at 465, 69 A. at 525. The California Supreme Court squarely faced these problems in Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968). The court rejected the argument that the imposition upon a tortfeasor of a duty to the mother would invite disaster because it would invite fraudulent claims and because it is impossible to define the extent of the tortfeasor's liability. In rejecting these assertions the court stated the test in terms of foreseeability, holding that the court should take into account such factors as the following:
(1) Whether plaintiff was located near the scene of the accident * * *
(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident * * *
(3) Whether plaintiff and the victim were closely related * * * [Cal.2d at 740, 69 Cal. Rptr. at 80, 441 P.2d at 920-921]
All of these factors exist in this case; indeed, there is simultaneous impact. Moreover, the absurdity of the rule of *591 no recovery for mental distress caused by negligent infliction of injuries to the child is highlighted in this case. "There is surely no great triumph of logic in a rule which permits recovery for anxiety about an unborn child, and denies it once a child is born." Prosser, Law of Torts (4 ed. 1971), § 54 at 334.
In terms of foreseeability our Supreme Court has expanded the horizons of recovery for emotional disturbance. In Falzone v. Busch, supra, 45 N.J. at 564, the court stated that "medical knowledge on the relationship between emotional disturbance and physical injury has expanded, and such relationship seems no longer open to serious challenge." See also, Restatement, Torts 2d, § 436. In denying liability for a heart attack allegedly caused by drinking brownish water due to a defective water softening system, our court relied on the tests of foreseeability and duty. Caputzal v. The Lindsay Co., 48 N.J. 69 (1966). Foreseeability is a matter not only of logic but of policy considerations, common sense and justice. Id. at 75, 78. In Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962), a case involving an attack on plaintiff in defendant's high-rise public housing development, the court, in denying plaintiff's right to recovery, stated:
The question is not simply whether a[n] ... event is forseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [at 583]
The present case deals with the relationship of a mother with her obstetrician, who, by virtue of his chosen specialty, holds himself out as having a special degree of skill. E.g. Lewis v. Read, supra, 80 N.J. Super. at 171. The risk created by a negligent act of one who stands in a physician-patient relationship is of enormous consequence to mother and child. See Lewis v. Read, supra, for an example of the tragedy that can result in cases of obstetrical malpractice. The public interest in holding a defendant liable for the consequential *592 distress to parents caused by a negligently inflicted injury may be more appropriately expressed as a human interest. Prosser states:
It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury. All ordinary human feelings are in favor of her action against the negligent defendant. [Op. cit. at 334]
It is clear that the common law position must be that anxiety and mental distress, when appropriately proven, are elements of damage in cases of injuries negligently inflicted on a child, at least where inflicted prenatally or at birth. It is eminently foreseeable that such injuries will result to a parent's well-being. The arbitrary line drawn at birth for prenatal injuries and at compensating only expenses incurred by parents of living children flies in the face of the reality of human feelings. There is no binding authority in this State mandating a contrary result in cases of this kind; thus, if defendants' conduct was negligent and caused injury, they have "no right to argue that they acted in reliance on a rule of law" of other jurisdictions and the absence of a rule in this State permitting recovery for anxiety due to negligently caused injuries to children. See, Smith v. Brennan, supra, 31 N.J. at 361.
Because all of the aforementioned elements of damage remain in issue in this case, defendants' motion for summary judgment is denied.
The law must not be allowed to become a rigid system of precedents from the past. While no precedent should be discarded simply because of its age, if our free society is to develop and remain in the forefront of human achievements, the common law must be allowed to probe, evaluate and alter rules of law to permit such development. The instant case is not revolutionary but evolutionary. To allow a recovery herein extends legally and properly the time honored boast of the common law that for every wrong there must be a remedy.