## JOHN FINNEY v. MATTHIAS APGAR.

1. When a contract is made for an article not existing at the time, and such article is to be made according to order, and as a thing distinguished from the general business of the maker, such contract is, in substance, not for a sale, but for work and materials, and as such is not within the statute of frauds.

2. The contract in this case held to be a sale, and therefore within the statute.

3. An acceptance taking the case out of the statute, is not proved by showing a deposit of the articles furnished in a public highway at a point designated by the purchaser, and a notification to him of the fact of such deposit, and a promise on his part of payment.

---

On *certiorari.*

Argued in the branch court, before the CHIEF JUSTICE and Justice ELMER.

This was a *certiorari* to the Hunterdon Pleas. The suit before the justice was in debt. Apgar, who was the plaintiff below, claimed in his state of demand $60, " due to the plaintiff from defendant for 14,000 spokes, sold and delivered to the defendant by the plaintiff," &c.

The plaintiff, who was sworn as a witness, thus states the

bargain and delivery of the articles : " In the first place, I went to Mr. Finney's to see him about spokes; to see if he was buying. He told me that he was buying spokes—all that came. I asked him what he was paying—he said $14. I told him I understood he was paying $14.25. He said he had been, but was paying only $14, and no cull. He said I should go and get them out and he would take them at $14. He then asked me who were getting them out, and I told him. I then told him I should get them out. He said I should deliver them at the dockyard below Brookville; I should pile them up on the left hand side of the road. He said he was paying no money until the canal opened. Then, he said, after that, I could have my money for the spokes. Then I got out 3952. I delivered and piled them up. I piled them on the left hand side of the public road. The spokes were delivered the last of March or the first of April, 1861. The bargain was about Christmas, 1860." " Then I saw Mr. Finney in May, 1861, after the spokes were delivered; told him how many spokes I had delivered and piled up, according to order. Then I asked him for some money; he said he hadn't it to spare just then; he said he would do something soon. The next time I met him along the road, he asked me how many spokes I had delivered; I told him the number as before." The witness afterwards stated that the next time he saw Finney he denied having bargained for the spokes, &c.

The judgment before the justice, and on appeal, was in favor of the plaintiff.

For plaintiff in *certiorari*, *A. V. Van Fleet* and *C. A. Skillman.*

Contra, *B. Van Syckel.*

THE CHIEF JUSTICE. From the statement of facts pre-fixed to this opinion, it will appear that the state of demand filed before the justice contained but a single claim, arising out of the sale and delivery to the defendant of certain arti-

cles by the plaintiff. As a bar to the cause of action thus disclosed, the defendant interposes the statute of frauds, insisting that there was no memorandum in writing, nor part payment, nor delivery and acceptance. To obviate this plea the defendant makes a two-fold rejoinder, *viz.: First.* That the contract sued on was not for the sale of goods, but was for work, labor, and materials; and, in aid of this position, contends that the court will, at this point of the cause in furtherance of the justice of the case, amend the state of demand. *Second.* That if the transaction be regarded as a contract for the sale of goods, that enough was proved to warrant the court below to infer a delivery and acceptance.

The points thus raised will be examined consecutively.

*First.* Was the agreement in question a sale of goods, or a contract for work, labor, and materials?

There are few legal topics perplexed by a greater number of irreconcilable opinions than the question of law involved in the foregoing inquiry. In England the more recent cases conflict, in a very marked degree, with those of an earlier date; and in this country it is difficult to find any two judicatures that, upon the point suggested, have entirely concurred. Nor is this discordance so remarkable as, upon first blush, it might seem. It grows out of the difficulties inherent in the subject. The language of the statute is, " that no contract for the sale of goods, wares, and merchandise, &c. ;" and the problem has been, what is a sale within the policy of the clause? In *Towers* v. *Osborne,* 1 *Strange* 506, a decision occurring about forty-five years after the date of the act, we find the first judicial attempt at a solution. The facts were: the defendant " bespoke," in the words of the report, " a chariot," and after it was made refused to take it. The court agreed that the case was not within the reach of the act, the grounds of conclusion being that the contract for sale contemplated by the designers of the statute, was one admitting of a present part payment and present delivery, since, by the performance of either act, the transaction could be validated. In effect, this case maintained that

Finney v. Apgar.

executory contracts were not within the purview of the law, thus extruding from the act that large class of cases, which stood most in need of its protection. Next in order of time followed the case of *Clayton* v. *Andrews*, 4 *Burr.* 2101, before Lord Mansfield, who held that a contract for the sale of corn, which the vendor was to thresh and then deliver within a prescribed period, was valid, settling this doctrine, however, upon the authority of the previous decision which has just been quoted. In this last case, Mr. Justice Ashton, who sat with Lord Mansfield, remarked, " that the case from Strange had always been considered as an authority in point, in questions of this kind." This latter adjudication was in 1766, and there appears to have been no further consideration of the subject by the English courts, antecedent to the era of the American Revolution.

But the test established by these cases was too clearly erroneous to last long, and accordingly the entire theory on which they were based was exploded by Lord Loughborough, in *Rendeau* v. *Wyatt*, 2 *H. Bl.* 63. The bargain sued on in that case was for the sale of a certain number of sacks of flour, which the defendant was to deliver on board the vessels of the plaintiff. This contract being executory, according to the principle adopted in the decisions reported in Strange and Burrow, it was clearly unaffected by the statute of frauds; but the court, reviewing the ground previously passed, came to a contrary conclusion, rejecting altogether the doctrine of the non-applicability of the act to contracts, which, by their terms, were performable in the future. In the same case Lord Loughborough pointed out the distinction so important to be observed in the application of the statute of frauds, between a sale and a contract for work and materials, and maintained that the former class was within its scope, but that the latter was beyond its control. This discrimination, then for the first time introduced, has exercised a most marked, if not controlling influence upon all subsequent judicial examinations of this subject. It is true that the later of the English cases have made the principle of little prac-

tical importance in the system which they regulate, by the extension of contracts of sale as a class, so as to embrace almost all cases in which labor is agreed to be expended, pro- vided the material on which such labor is to be employed is the property of him who is to do the work. To such an ex- cessive length has this been pushed, that in the last case which has been reported, we find the court holding that an order for a set of false teeth was an agreement to sell, and not to work and labor, and in delivering his opinion one of the judges does not hesitate to use the following language: " If a sculptor was employed to execute a work of art, greatly at his skill and labor, supposing it to be of the highest de- scription, might exceed the value of the marble on which he worked, the contract would, in my opinion, nevertheless be a contract for the sale of a chattel." *Lee* v. *Griffin*, 1 *Best & Smith*, 272, 101 *E. C. L.* This is indeed a wide divergence from the grounds upon which rest the original decisions above referred to, and it is the doctrine of those decisions which has become incorporated in the jurisprudence of this country. That doctrine is, that where the work and labor is the substantial object contracted for, although such work and labor is to be expended on the materials of the party who is to furnish the article at a given price, such contract is not for a sale, and consequently is not within the statute.

From a careful examination of the English and American authorities and the principles illustrated by them, I think the following general rules may be deduced, *viz.*: *First.* That a contract for the sale of goods which is purely executory, is as much within the statute as is one to be executed in *presenti.* *Second.* That where a contract is made for an article not existing at the time in *solido*—to use the expression of the old cases—and when such article is to be made according to order, and as a thing distinguished from the general business of the maker, then such contract is, in substance and effect, not for a sale, but for work and materials.

The first of the above rules is now received everywhere with entire judicial unanimity.

With regard to the second rule, much conflict of opinion exists, but I think it is recommended by its evident consonance with the object of the statute, as well as by the decided weight of authority. It will be found to be sustained by the following well considered cases. *Crookshank* v. *Burrell*, 18 *Johns.* 58; *Mixer* v. *Howarth*, 21 *Pick.* 205; *Hight* v. *Ripley* 19 *Maine* 137; *Gardiner* v. *Joy*, 9 *Met.* 177; *Lamb* v. *Crafts*, 12 *Met.* 356.

This being then, as it is conceived, the true rule of law upon this subject, it remains to be considered in its application to this case. My conclusion is, that the facts proved do not fall within the foregoing definition of a contract for work, labor, and materials. The articles agreed to be furnished were small pieces of wood in the rough, which could be conveniently turned into wagon spokes. The entire treaty between the parties indicates, in the clearest manner, that they both regarded the transaction as a sale. The plaintiff, in his state of demand, has, by treating it as a sale, expressed, in a very marked form, his own understanding of the true nature of the affair. It would be doing violence at once to the facts and the intentions of the parties for the court to hold the contract in question to be anything but a sale of the articles in question.

In principle the case seems to fall within the boundaries of that class of cases which exemplify the distinction between a mere preparation or slight alteration of the form of a thing which, in substance, exists at the time the contract is made, and the conversion of the raw material into the perfected form of the manufactured article. Thus it has been properly held, that the statute applies to an agreement for a certain number of sacks of flour, although the same were not ready for delivery, the flour being unground at the time; it being regarded that such alteration of the form of the article was a mere preparation of it for delivery on a sale. *Garbutt* v. *Watson*, 5 *Barn. & Ald.* 613. And the same distinction was recognized in the case of a purchase of timber, part of which was standing at the time and was to be cut

down by the vendor, the court saying—"it was a contract for a future sale of timber, when it should be fit for delivery. The vendor, in felling the timber and preparing it for delivery, was, in my opinion, doing work for himself and not for the vendee." *Smith* v. *Turman*, 5 *Man. & Ry.* 455.

The present case must rest on the same grounds. The transaction, as presented in the proofs, was a sale, and the alteration in the form of the article stipulated for was a preparation of such article for delivery.

But in the second place, admitting the circumstance of a sale, it is insisted that there were facts in evidence from which the court below, sitting as the judges of those facts, had the right to infer that the goods were delivered and actually accepted by the defendant.

It is admitted, that if there was any testimony from which such inference could have been rightfully drawn, this court cannot interfere with the judgment which has been rendered. But the case seems to me utterly devoid of such testimony. It is true the plaintiff proved that he took the articles and deposited them in the public highway, at a point designated by the defendant at the time of the bargain; that about a month after doing so he informed the defendant of the fact, who promised to pay him for them in a short time, and that, at a subsequent period, he had a second conversation of a similar purport. There was nothing to show that the defendant took possession of the articles, or, indeed, ever saw them.

It is obvious that the whole of this transaction rests in parol, and the provision of the statute in question is a mere illusion, if it can be thus evaded. It is true, that many cases establish the proposition that there may be a constructive acceptance, which will satisfy the legislative requirement. But no case has come under my notice which has gone the length to hold, that a deposit of goods in a place common to all persons alike, with a notification to the purchaser of such goods, accompanied by a mere promise of payment on his part, was the actual acceptance contemplated by the statute.

If, after such notice, the defendant had taken possession of the property, or had done any act indicative of an intention to treat it as his own, the case would have borne a different aspect. But no such circumstance being disclosed, it seems impossible to charge him with the statutory acceptance. The most important of the decisions upon this point will be found to be reviewed in *Morton* v. *Tibbitt*, 15 *Q. B.* 428, and from such review it will appear that to exempt this case from the operation of the statute on the ground of an acceptance of the articles by the defendant, would be to take a step in advance of the most extreme of the precedents. No inclination is felt to do this. The statute is eminently beneficial in its effects, and is consequently entitled to the most favorable consideration on the part of the court.

The judgment of the court below should be reversed.