EMIL BERG, DEFENDANT IN ERROR, v. RAPID MOTOR VEHICLE COMPANY, PLAINTIFF IN ERROR.

Argued November 24, 1909—Decided February 28, 1910.

1. The plaintiff, who was ignorant of the operation of automobiles, represented to defendant, a manufacturer of such vehicles, that he was about to engage in the business of conveying passengers in sight-seeing automobiles. The defendant sent him its latest catalogue, and a correspondence resulted from which a jury might reasonably conclude that the defendant represented to the plaintiff that it could send him the character of machine he required in the business he was about to enter. *Held*, that the issue thus presented was whether the defendant had supplied to the plaintiff an automobile reasonably fit for his use.
2. Where a case is tried by both parties upon a theory which disregards the precise issue raised by the pleadings, the defeated party is estopped from urging as error a ruling of the trial court based upon the pleadings, but which as applied to the issue as tried is correct.
3. Debatable questions, of reasonable time, acceptance and reasonable use for the purpose of inspection and acceptance, are for the jury.

---

On error to Hudson Circuit Court.

For the plaintiff in error, *Alfred B. Van Liew* and *Frank E. Bradner*.

For the defendant in error, *Samuel Heyman* and *George T. Brensinger*.

The opinion of the court was delivered by

MINTURN, J. The plaintiff at the time of this investment was a clerk in a hat store in Jersey City. He conceived the idea of entering into the business of conveying passengers for hire in a sight-seeing automobile in and about Asbury Park in this state, and, intending to form a company for the purpose, notified the defendant, which was a corporation engaged in the manufacture of automobiles at Pontiac, Michigan, that he was ready to do business. This resulted in a series of letters between the parties, including the sending of defendant's catalogue for 1908. The result of the correspondence was the receipt by plaintiff of a proposition in writing from defendant that it would manufacture one Model E. 125, thirty horse-power automobile, capable of conveying twenty passengers, which the defendant would guarantee for one year against defects in workmanship or material. The plaintiff accepted the proposal upon the terms offered, viz., $1,200 cash and the balance upon promissory notes, the machine to remain the property of defendant until the payments were made. The correspondence between these parties makes it quite clear that the plaintiff possessed little or no knowledge of automobiles, and that he was depending upon the defendant company as a manufacturer to supply him with the article necessary to enable him to successfully prosecute the business he was about to undertake, the details of which he had substantially communicated to the defendant, and that the defendant endeavored to make it clear to the plaintiff that it possessed or could manufacture the very machine which the plaintiff required for the successful conduct of the business he was assuming.

Upon payment of the purchase price in the manner agreed upon the machine was delivered to plaintiff at the railroad depot in Hoboken, and then, according to the plaintiff's testimony, his troubles began. It will serve no useful purpose to recite the troubles and misfortunes into which the plaintiff

testifies he was plunged as the result of this investment. It will suffice to say that as a climax to his attempts to successfully operate the car, the plaintiff says he was "very much discouraged," and finally turned it into a garage at Asbury Park, subject to defendant's disposal, and wrote defendant: "My car would not stand up, and I have gone to Jersey City penniless—broke." The defendant subsequently took the car and resold it.

The defendant insisted, and, according to its contention proved, by adequate testimony that the car was all that it was represented, and that, in effect, the failure of the plaintiff to successfully operate it was due to his method of operation.

. The declaration substantially declares for a breach of contract, alleging the special items of damage, and annexing a bill of particulars of those items. The case was tried by counsel upon both sides and submitted to the jury by the trial court upon that theory, and this court therefore will consider it only upon that *status*. *Meader* v. *Cornell,* 29 *Vroom* 375; *Edgewater and Fort Lee Railway Co.* v. *Valvolene Oil Company,* 47 *Id.* 789.

The trial court charged that the plaintiff must support, by a preponderance of testimony, the burden of showing that the motor supplied could not generate thirty horse-power, and for his failure so to do the defendant would be entitled to a verdict. The jury having found for the plaintiff we must assume that they found against the defendant upon this issue. This direction was decidedly in favor of the defendant, because the plaintiff was entitled to go to the jury also on the question whether the defendant had supplied a machine capable of performing the work for which the plaintiff purchased it, and for which the defendant knew he purchased it. Such was the view entertained by Mr. Justice Depue in *Walcott* v. *Mount,* 7 *Vroom* 262. The rule is an equitable modification of the hardship resulting from the uniform enforcement of the doctrine of *caveat emptor,* and was first applied in *Jones* v. *Bright,* 5 *Bing.* 533; 15 *Eng. Com. L.* 529, where it was held that a manufacturer or maker, who undertakes to supply an article for a particular purpose, warrants it to be

reasonably fit for that purpose. And the reason for the existence of the warranty thus implied is that the purchaser must rely upon the judgment and skill of the vendor. This doctrine has been held to apply, whether the subject of the contract is already manufactured and in stock, or is to be made on the purchaser's order. *George* v. *Skivington, L. R.,* 5 *Ex.* 1; *Behn* v. *Burness,* 6 *Eng. Rul. Cas.* 492; *Curtis & Co. Manufacturing Co.* v. *Williams,* 48 *Ark.* 325; *Blackmar* v. *Fairbanks,* 70 *Iowa* 282; *Kellogg Bridge Co.* v. *Hamilton,* 110 *U. S.* 108; *Dushane* v. *Benedict,* 120 *Id.* 630; *Seits* v. *Brewers Machine Co.,* 141 *Id.* 510.

The questions of acceptance of the machine and the rescission of the contract within a reasonable time were properly, under the conflicting testimony, left to the jury. These questions, where the facts are in dispute, or the circumstances are open to discussion, are invariably treated as jury questions. *Furniture Company* v. *Board of Education,* 29 *Vroom* 646.

Chancellor (then Justice) Pitney, discussing this and cognate questions in *Burr* v. *Adams Express Co.,* 42 *Vroom* 263, 269, states the doctrine: "In this, as in all cases where questions of reasonable time, opportunity or the like are at issue, the determination of what is reasonable where the facts are in dispute or the inference to be drawn from undisputed facts is in doubt, is a question of fact and not of law."

*Woodward* v. *Emmons,* 32 *Vroom* 285, cited by the plaintiff in error, in nowise contravenes this principle, because there the *ratio decidendi,* in the language of the opinion, was that "the failure to return or offer to return the machines, together with their continued use for purposes of profit or convenience for almost a year, should be construed to be an election to accept and retain the machines."

*Timlan* v. *Dilworth,* 47 *Vroom* 568, supports the doctrine by asserting its converse, *i. e.,* that "what is a reasonable time when the facts are undisputed and different inferences cannot reasonably be drawn from the same facts, is a question for the court and not for the jury."

In *Starr* v. *Torrey,* 2 *Zab.* 190, the court said, referring to

a trial of machinery sold: "It required time to make the experiment" to determine its fitness.

So in the case *sub judice,* it required time to enable the plaintiff to experiment with this machine, so as to enable him to determine whether he would accept or reject it, and whether the time thus consumed by him was reasonable or not, was clearly a question for the jury.

Nor was the defendant injured by the rule of damages applied by the trial court in this case. The defendant substantially concedes that the sum of $1,200 paid on the purchase price by the plaintiff was a proper item of allowance, but insists that the court should have directed a deduction of the full amount received by the plaintiff as profit from his enterprise. The rule of damages laid down by the trial court was an excerpt from the opinion of Mr. Justice Depue in *Wolcott* v. *Mount, supra,* which, in turn, was based upon the now familiar doctrine enunciated in *Hadley* v. *Baxendale,* 9 *Exch.* 341, and substantially contained in our Sales act (*Pamph. L.* 1907, *p.* 337), that the damages must be such "as the parties must have contemplated as the natural result of the breach of the contract under the special circumstances of the case."

The judgment will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, JJ. 14.

*For reversal*—None.