35 N.J. Super. 422 (1955)
114 A.2d 457
LOCKS LABORATORIES, INC., A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
BLOOMFIELD MOLDING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1955.
Decided May 13, 1955.
*424 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Herbert J. Kenarik argued the cause for the defendant-appellant.
Mr. Irving Morris argued the cause for the plaintiff-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff manufactures and distributes cosmetic, hair and pharmaceutical preparations. The defendant makes injection and compression molds, and plastic articles therefrom.
The plaintiff charges that on July 28, 1950 it ordered from the defendant a mold to be constructed to produce plastic *425 combs for miniature brushcombs, and 50,000 of the combs to be made from such mold. There was no written agreement between the parties other than the order on the letterhead of the defendant, calling for delivery of the mold in eight weeks, at a cost of $3,100, which sum the plaintiff paid to the defendant on or about February 26, 1951.
Count One of the complaint charges that the mold was improperly made, seeks the return of the $3,100 paid therefor and states that the defendant "did represent and warrant through its agents * * * that it had the experience, qualifications and skill to make, create and design a mold for the plaintiff, to wit, a six cavity injection mold which would be capable of being used in the production of millions of combs of Polystyrene as per example and specifications" and "did represent and warrant that said mold when so made, created and designed could be used by them and others in the production of combs * * *." Count Two of the complaint seeks to recover overcharges allegedly paid by the plaintiff to the defendant for plastic combs delivered. The third and fourth counts of the complaint were voluntarily withdrawn by the plaintiff.
The defendant at the close of the plaintiff's case moved to strike the first count of the complaint, contending that its allegations were based on an express warranty and that the plaintiff had submitted no proofs to support such an allegation. The court denied the motion, saying "the conduct inter partes is evocative of an implied warranty." On a motion for dismissal at the conclusion of the entire case, the court said that the "pleading in count one is broad enough to evoke a warranty."
The jury found in favor of the plaintiff for $3,100 on the first count, and in favor of the defendant on the overcharges. The defendant's motion for a new trial, on substantially the same grounds now advanced on appeal, was denied. This appeal is from the final judgment in favor of the plaintiff and from the denial of the motion for a new trial, on the grounds that the court erred in denying the motion to strike the first count of the complaint, in admitting testimony by two witnesses *426 who it alleges were not qualified as experts, in failing to properly instruct the jury as to the law and that the verdict was the result of bias, passion, prejudice or mistake.
The defendant contends that there can be no implied warranty under the Uniform Sale of Goods Law, R.S. 46:30-1 et seq., because the contract was not a "sale," but an agreement for work and materials, relying on Finney v. Apgar, 31 N.J.L. 266 (Sup. Ct. 1865). That case dealt with the question of whether such a contract constitutes a sale for purposes of the statute of frauds, and is not authority for the defendant's contention. Metropolitan Lumber Co. v. Ivers-Lee Co., 6 N.J. Misc. 304 (Sup. Ct. 1928), also cited by the defendant, is predicated upon a misreading of the holding in the Finney case, supra, and cannot be held to be an authoritative statement of the applicable rule of law.
The agreement between the parties related to a mold, something that was to be manufactured and not an article in solido. R.S. 46:30-11 provides for existing or future goods to be manufactured or acquired after the making of the contract to sell. Rhind v. Freedley, 74 N.J.L. 138 (Sup. Ct. 1906); Cravenette Co. v. C.A. Woolsey, etc., Co., 103 N.J.L. 49 (E. & A. 1926).
R.S. 46:30-21, which is substantially the same as section 15 of the Uniform Sales Act, provides that:
"* * * there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."
The foregoing provisions give the plaintiff the benefit of the Uniform Sales Act. Reynolds v. Sun Ray Drug Co., 135 N.J.L. 475 (E. & A. 1947); Yormack v. Farmers' Cooperative Ass'n of N.J., 11 N.J. Super. 416 (App. Div. 1951).
Here, the testimony discloses that the plaintiff supplied to the defendant a set of plans and samples of a regular-sized *427 brushcomb. Mr. Sam Novick, president of the defendant, told the plaintiff they had made many molds and invited Mr. Twitty, secretary and treasurer of the plaintiff, to inspect their plant. He was shown the molding room and was impressed by its "very large plant with an awful lot of machinery in it." He saw molds being constructed, molds in operation and plastic articles produced from molds. He testified that from what he saw and from the representations made to him he believed the defendant competent and capable of making the comb mold and producing the plastic combs. His testimony was not denied, and Mr. Novick did not testify.
The order for the comb mold was given to the defendant on July 28, 1950 and it was to have been completed within eight weeks, or by October 1, 1950. The first delivery of the original order for 50,000 plastic combs was received on January 2, 1951. On January 30, 1951 the defendant wrote to the plaintiff that the comb mold was then in good order and that it was proceeding to complete the order, which seems to indicate that previously the mold had not been working properly. During the ensuing two-year period, the plaintiff ordered an additional 100,000 combs. The evidence is clear that deliveries were sporadic, usually behind schedule and there is testimony, as well as letters from the defendant received in evidence, that the mold was several times in the "toolshop" or "in repair." Suffice it to say that of the 150,000 combs covered by the plaintiff's first two orders, it received a total of 66,628, the last shipment being received on February 21, 1952.
On April 22, 1953, at the request of the plaintiff, the mold was turned over to the Leaf Plastics Co. so that it might produce the combs required by the plaintiff. However, its president testified that the mold was defective. Subsequently, it was sent to the Guy P. Harvey & Son Corp., moldmakers, for repairs, for which the plaintiff on January 20, 1954 paid $596.26. In his deposition, Mr. Harvey avers that in order to correct the mold an additional $2,484 would have to be expended and that in his opinion it would be better to make a new mold.
*428 The evidence discloses that the defendant knew that the plaintiff relied upon its judgment and skill; it knew the use for which the mold was intended, the required productive capacity and the necessary quality of the product. The defendant assumed the responsibility of making the mold and thus impliedly warranted it would be reasonably fit for the purpose specified. In Vacuum Ash, etc., Co. v. Huyler's, 101 N.J.L. 147 (E. & A. 1925), the court held:
"* * * a manufacturer or maker who undertakes to supply an article for a particular purpose, warrants it to be reasonably fit for that purpose. * * * Whether the action shall be technically considered an action on a warranty, or an action for the nonperformance of a contract, is entirely immaterial."
See also Berg v. Rapid Motor Vehicle Co., 78 N.J.L. 724 (E. & A. 1910); Cravenette Co. v. C.A. Woolsey, etc., Co., 103 N.J.L. 49 (E. & A. 1926).
Mr. Leaf and Mr. Harvey testified on behalf of the plaintiff as experts on injection molds. The defendant objected on the ground that they were not qualified to testify as experts on the use of beryllium copper in a mold for plastic combs. However, the trial court held that both Mr. Leaf and Mr. Harvey, each having had approximately 20 years' experience in the injection molding business, were qualified to testify as experts. Whether a witness qualifies as an expert is within the sound discretion of the trial court and we find no abuse of discretion in this instance. Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950); Lawrence v. Tandy & Allen, 14 N.J. 1 (1953).
The defendant argues that while the cause of action originally proceeded on the theory of an express warranty, the trial court of its own volition changed the basis to that of implied warranty, R.S. 46:30-21, yet it did not instruct the jury as to the applicable statute. However, the record is devoid of any request to charge thereon, or any objection to the charge as made, and hence the point has no merit on appeal.
The defendant further argues that objection was made to the charge in a side bar discussion, which was not recorded *429 by the court reporter and, hence, is not printed in the appendix. On oral argument, the defendant's attorney stated that when such omission was called to the attention of the trial court, he was advised to bring it to the attention of the Appellate Division and he now urges us to give effect to R.R. 1:5-3(c). The object of an appeal is to correct errors properly noted below  not to retry a case. R.R. 1:6-6 provides for correcting or modifying the record to be used on appeal and obviously this procedure was not followed. In Lang v. Morgan's Home Equipment Corp., 6 N.J. 333 (1951), it was held that "Facts and inferences drawn from facts which are outside the record have no place in the argument of an appeal." See Domestic Fuel Co. v. American Petroleum Corp., 6 N.J. 538 (1951). Giving due regard to the defendant's contentions, we do not find in the record any errors affecting its substantial rights which would justify a reversal.
The defendant further contends that it was entitled to a dismissal of the complaint on the ground that the plaintiff had failed to submit proofs in support of an express warranty. While it is true that neither the complaint or the pretrial order mentions whether the warranty was express or implied, we are satisfied that from the general allegations thereof proof of either might properly be submitted. 77 C.J.S., Sales, § 364, pp. 1279-1280.
Lastly, the defendant argues that the preponderance of the evidence was so weighted in its favor that the judgment in favor of the plaintiff was the result of bias, passion, prejudice or mistake. It is significant that only one witness testified for the defendant  Mr. Sanders, who, although not in the defendant's employ when the parties made their agreement in July 1950, was employed by the defendant from February 1952 to May 1954. He excused the defendant's failure to complete plaintiff's orders on the ground that it had too much work on hand and was unable to schedule the mold for production because other machines were overloaded. However, the record reveals that when in 1953 the plaintiff inquired when its order would be delivered, the reply was *430 that the mold was in repair and, a short time later, that it was in the toolshop.
It does not appear that the trial court acted arbitrarily in refusing to grant a new trial, giving due regard to the provisions of R.R. 4:61-1(a). The exercise of such discretion is not disturbed on appeal unless, after giving due consideration to the provisions of R.R. 1:5-3(a) and R.R. 2:5, it clearly appears that the trial court acted arbitrarily. Amado v. Malibu Dude Ranch, 26 N.J. Super. 445 (App. Div. 1953). While the defendant charges that the judgment for the plaintiff on the first count was based on bias, passion, prejudice or mistake, it is difficult to understand such a charge when there was a verdict for the defendant on the second count.
Judgment affirmed.