NEW JERSEY SCHOOL AND CHURCH FURNITURE COMPANY, PLAINTIFF IN ERROR, v. THE BOARD OF EDUCATION OF SOMERVILLE, DEFENDANT IN ERROR.

1. For the bare breach of a contract unaccompanied by proof by which actual damage may be inferred or measured, a recovery for nominal damages may be had. *Held*, in such case it is error to nonsuit the plaintiff.

2. To warrant a nonsuit it is not enough that the facts are without dispute; the inference that is drawn from such facts must likewise be, in a legal sense, indubious, *i. e.*, one about which reasonable men may not honestly differ.

3. The question of reasonable time is generally for the jury, and always so when it rests upon conflicting inferences as to the mutual effect of the conduct of the parties to the transaction.

On error to the Supreme Court.

For the plaintiff in error, *Linton Satterthwait.*

For the defendant in error, *James J. Bergen.*

The opinion of the court was delivered by

GARRISON, J.    The controversy in this case is over certain school desks manufactured for the defendant by the plaintiff. When the desks were ready for delivery the defendant refused to accept them, because of delay in filling the order.    This action for the contract price was thereupon brought.

At the close of the plaintiff's testimony a nonsuit was directed by the trial court.    The two grounds upon which

this judgment was directed were that no proof for the measurement of the damages had been offered and that the delay of the plaintiff had released the defendant from its agreement to take the desks.

Upon the first point the view of the learned justice who tried the cause was thus expressed : " Where the contract is executory, where the articles are not in a deliverable state at the time of making the contract, then the property does not pass, and, as there has never been a passing of the property, the only remedy is an action on the case for breach of the contract or failure to accept ; and the measure of damages in the latter case is the difference between what the plaintiff would have received if he had been paid the contract price and the market value of the goods sold, and as there has been nothing in this case to show the value of these goods, there is nothing for the jury to base their verdict upon, for the contract price and the market price may in this case be one and the same thing, and consequently no injury done to the plaintiff."

It is not necessary to pass upon the correctness of this exposition of the law, for the reason that even if the rule be as stated it would not sustain the judgment pronounced. The effect of a nonsuit in such case is to concede that the defendant has broken its contract, and yet to deny that the plaintiff may have judgment—a paradoxical result for which authority is wanting. At common law a breach of contract was, *per se*, a legal injury, from which some damage to the plaintiff would be inferred. If actual injury be not proved, nominal damages alone can be recovered. A plaintiff who fails to offer proof by which his injury may be measured is in no worse state than he who proves no injury at all. The accepted rule upon this subject is thus stated by Chief Justice Beasley : " Where actionable misconduct is shown on the part of the defendant on the breach of a covenant, the law implies nominal damages at least." *Golden* v. *Knapp*, 12 *Vroom* 215.

And in the case of *Quin* v. *Moore*, 15 *N. Y.* 432, where a nonsuit was asked upon this ground, Judge Comstock, speak-

ing for the Court of Appeals, said : "As the statute expressly gives the right of action, nominal damages at least could be recovered.   The motion for a nonsuit made in part upon this ground was-properly denied."

When we consider that the doctrine of *res judicata,* or even the title to property, may rest upon a judgment for nominal damages as well as upon a more substantial redress, it is evident that the right to a verdict is not controlled by the incidental question of the amount of damages to be recovered.

The cases upon this subject will be found collected in *Sedgw. Dam.,* § 98, where the proposition formulated by that accurate writer is "that nominal damages may be recovered for the bare breach of a contract unaccompanied by proof of actual damage."

Before leaving this branch of the case, it may be well to say that the testimony, with respect to the articles in suit, does not make it entirely clear that they were not within the rule that obtains in cases of specific manufacture.   *Sedgw. Dam.* 337.

The other ground upon which the plaintiff was nonsuited was that at the time of the offer to deliver the desks there was no contract between the parties, or, in the language of the trial court, "there can be no recovery by the plaintiffs, for the breach of the contract was by them, and not by the defendants."   The facts of the case are not in dispute, being for the most part the written communications between the parties, or the entries in the minutes of the defendant.   This circumstance does not, however, of itself create a question of law for the court, since if indisputable facts admit of two inferences, one favorable and the other unfavorable to the plaintiff, a question is presented that calls for the opinion of the jury.

In other words, to warrant a nonsuit it is not enough that the facts are without dispute ; the inference that is drawn from such facts must likewise be, in a legal sense, indubious, *i. e.,* one about which reasonable men may not honestly differ.

The proposition, therefore, upon which this nonsuit rests must be that upon no reasonable inference deducible from the

facts before the trial court was the defendant bound to accept the desks at the time they were tendered.

This inquiry necessitates a statement of the main facts of the transaction in question. The negotiation between these parties began at an interview between the defendants, who are public school directors, and an agent of the plaintiff, a corporation engaged in the manufacture of school furniture. This was prior to July 23d, 1894, upon which date the parties executed the following written agreement:

" Memorandum of agreement, made this 23d day of July, A. D. eighteen hundred and ninety-four, between the Board of Education of Somerville, New Jersey, and New Jersey School and Church Furniture Co., of Trenton, New Jersey.

" Witnesseth, That the said The Board of Education agrees to purchase of said New Jersey School and Church Furniture Co., one hundred and forty-six (146) adjustable single Novelty desks, grammar size; two (2) teachers' desks, No. 71; one (1) teacher's desk, No. 74.

" The said articles are to be made in good, workmanlike manner, of good material, and to be delivered by said New Jersey School and Church Furniture Co., in the public school-house at Somerville, put up ready for use, not later than September 25th, 1894, and as much earlier as possible.

"And the said Board of Education agrees to pay to the order of said New Jersey School and Church Furniture Co. therefor, the sum of $510.

" (Signed)          A. G. ANDERSON,
" *President of the Board of Education,*
" *Somerville, N. J.*

" Signed for New Jersey School and Church Furniture Co.
" L. H. McKEE, *Manager.*"

No desks were delivered under this contract by September 25th, the latest date fixed for the performance; but on the contrary, the inability of plaintiff to comply with its under-

650 COURT OF ERRORS AND APPEALS.

taking was communicated to the defendants, as appears by the following extract from their book of minutes :

"October 4th, 1894. The agent for the Trenton Furniture Company was present and stating that to their inability to procure the necessary castings for the adjustable desks, there was no telling how soon they would be able to fill our order for furniture for the new school-house; they had only forty-five or fifty of these desks completed; he promised to put in the New Era desk, either permanently or temporarily; it was the sense of the board that we wanted that desk previously ordered. On motion, the furniture company was requested to ship at once as many of the adjustable desks as they had and fill in the balance of the order with the New Era desks, the same to be replaced with the adjustable desk as soon as possible."

The outcome of this communication was that upon October 13th the plaintiff shipped to the defendant one hundred and sixty New Era desks, an increase of fourteen over the original contract. These desks were put in use by the defendant, and nothing further was heard concerning them until March 7th, 1895, when it appears by an extract from the defendant's minutes that the New Era desks were not deemed acceptable, and that a member was requested to meet with a representative of the plaintiff to see if some satisfactory arrangement could not be made. At a meeting held on March 14th an agent of the company was present, and agreed that if the desks of the kind originally ordered were wanted they would be put in upon April 12th and 13th. Two sample desks were forthwith shipped to the defendant, who, however, makes no mention of the fact in a letter written on April 19th, 1896, in which they recite the two failures of the plaintiff to deliver the kind of desks ordered, and say, in conclusion :

"Your people seem to be determined that we shall accept some other desk than that we purchased, for the reason that you think the adjustable desk will not be satisfactory. The board desires to say very emphatically that we will take the

responsibility of any dissatisfaction, provided you furnish what you agreed to, which we expect you to do at once. ·Please advise.  " Yours truly,

"H. P. MASON,

"*Secretary Board of Education.*"

The two letters that follow were received by the defendants, who do not appear to have made any reply to the inquiries they contained :

"TRENTON, N. J., April 22d, 1895.

"*Mr. Henry P. Mason, Sec'y B. E., Somerville, N. J.:*

"DEAR SIR—In reply to your favor of the 19th instant, concerning our furnishing the original adjustable desk, permit us to say that we will proceed at once to supply the same. We will require a few days to get them in readiness ; and as we learn that you desire the desks darker in color than the last ones, we will have to go over the stock we have again. The original order calls for 146 desks, while we have supplied you altogether with 160.   Would you please inform us your desire as to what style and size the 14 extra desks should be.

" Most respectfully,

" NEW JERSEY SCHOOL AND CHURCH

FURNITURE CO.

" L. H. McKEE,

" *Secretary.*,,

"TRENTON, N. J., May 13th, 1895.

"*Mr. H. P. Mason, Sec. B. E., Somerville, N. J.:*

" DEAR SIR—We are now on the point of shipping the desks, and ask that you kindly let us know about the 14 desks referred to in our last letter.   The desks we are shipping according to contract, and are like the two we sent to you some time ago.

" Kindly let us hear from you as soon as possible, and oblige,  Most respectfully,

" NEW JERSEY SCHOOL AND CHURCH

FURNITURE CO.

" Dictated—L. H. M."

On May 15th, two days after the last of these letters, the defendant wrote to the plaintiff, canceling the order, in these words: "You have failed to keep your part of the agreement, and we are therefore under the necessity of canceling the order with you and placing it with other parties."

From this brief history of this transaction it is entirely clear that the agreement as to time was entirely abandoned, and that even the description of the article wanted was for a long period held in abeyance. At least such would be a not unreasonable inference from the conduct of the parties. It was not, indeed, until the interview sought by defendants, upon March 14th, that the agent of the plaintiff was informed that the New Era desks, that had been in use without complaint for over five months, were not finally acceptable to the defendants.

The conduct of the defendants in renewing their order for the desks originally ordered, and continuing to urge their delivery, so far from being notice of a purpose to abandon the contract, was consistent alone with the notion that the agreement was still in force. Under such circumstances, the delivery of the desks within a reasonable time after receipt of an answer to the pertinent inquiries of the plaintiff would have been a legal fulfillment of the contract. The question of reasonable time is generally one of fact for the jury, and is always so when it rests upon conflicting inferences as to the mutual effect of the conduct of the parties to the transaction.

In the present case that was undoubted delay, but the question whether a reasonable time had elapsed or even begun to run, in view of all the circumstances, would seem to be susceptible of two answers, one of which would not be unfavorable to plaintiff's contention.

The further fact that the defendants had in use free of charge one hundred and sixty of the plaintiff's desks and that the school year had nearly terminated, might also be considered upon the reasonableness of the defendant's conduct where no specific date was set for filling the order.

There are other circumstances of more or less significance,

but enough has been said to indicate the test according to which, as we think, the whole case should have gone to the jury, viz., that the conclusion of fact to which the learned justice came, was not one about which reasonable men might not honestly differ. There must be a *venire de novo.*

*For affirmance*—THE CHIEF JUSTICE, DEPUE, LUDLOW, VAN SYCKEL. 4.

*For reversal* — THE CHANCELLOR, DIXON, GARRISON, BARKALOW, BOGERT, NIXON. 6.