FRANK RACANATI, PLAINTIFF-APPELLANT, v. BLACK DIAMOND STEVEDORING COMPANY, INC., DEFENDANT-RESPONDENT.

Submitted May 26, 1944—Decided September 14, 1944.

For the appellant, *Nathan Baker.*

For the respondent, *Carpenter, Gilmour & Dwyer* (*Patrick A. Dwyer* and *James F. Beggans,* of counsel).

The opinion of the court was delivered by

HEHER, J. We concur in the conclusion of. the Supreme Court that there is no tangible evidence tending to show that the representation in question was false to defendant's knowledge at the time it was made; and thus we have no occasion to consider defendant's contention that an action in deceit will not lie 'for such fraud, since a recovery in deceit would constitute an adjudication by the state court of plaintiff's "right to compensation" under the Federal Longshoremen's and Harbor Workers' Compensation Act of 1927, as amended by chapter 685 of the Public Laws of 1938 (44 *Stat.* 1424; 52 *Id.* 1164; 33 *U. S. C. A.,* §§ 901, *et seq.*), termed the "exclusive function" of the Compensation Commission created to enforce the legislative scheme, and, morever, the time limitation for proceeding under the Act is annexed to the right and not the remedy merely, and the right has been lost

by the lapse of the period thus limited, and an indirect recovery in the form of damages in tort would run counter to the statutory policy. It will not be amiss to say, however, that at common law there is a right of action for damages occasioned by the fraud of another, enforceable by an action on the case for deceit. Generally, actual injury is an essential element. The question is whether the defendant has inflicted such a wrong upon the plaintiff as resulted in lawful damages. Where false representations are willfully made as to a material fact, for the purpose of inducing another to act upon them, and he does so to his injury, he may recover such damages as proximately result from the deception. *Kujek* v. *Goldman,* 150 *N. Y.* 176; 44 *N. E. Rep.* 773.

The gravamen of the complaint is that plaintiff sustained permanent partial disability of his right arm, compensable under the Federal Act, and was "deprived of his claim for compensation" therefor under the cited statute through reliance upon the representation of defendant's agent that a physician "employed by the defendant to treat the plaintiff" had made a "report" to defendant that plaintiff had "sustained no permanent partial disability of his right arm as a result of the accident," and he was therefore "not entitled to any further compensation payments from the defendant," and that defendant well knew "from the reports or information obtained" from the physician that plaintiff "had permanent partial disability of the right arm as a result of the injuries sustained in the accident."

The insistence is that, since the agent admitted on the witness stand that he had not received a report from the physician "stating specifically that there is no permanent disability," it is reasonably inferable that when he made the representation he knew it to be false. But the representation made by the agent was a fair interpretation of the report submitted by the physician; and men of ordinary reason and fairness could not on such evidence affirm the proposition of *scienter.* There was evidence of the submission of two written reports by the physician—the first dated April 25th, 1935; and the second, the ensuing May 25th. In the first, it was certified that plaintiff had sustained a transverse frac-

ture of the right clavicle; that "complete union" had taken place, but there was still restriction of motion in the shoulder joint, and it was the writer's opinion that he would be "temporarily disabled until about May 6th," but would not require "any further treatment after that date." In the second, defendant was advised that plaintiff had been "discharged from further treatment;" and that, while "there is some slight restriction of motion in the shoulder joint when he tries to fully elevate the arm," that condition "in a few weeks time will completely disappear," and the writer had advised him to resume his duties forthwith.

It is said that the evidence raises a jury question as to whether the second report was in being at the time when the asserted representation was made. Perhaps so. But, as respects the existence of permanent disability, the two certifications are equally definitive. When the first report was submitted, there was doubt only as to the period of temporary incapacity, although not a serious one. It was made clear that, in the writer's expert opinion, it would not extend beyond May 6th, an interval of but eleven days. It is also suggested that the first opinion was tentative merely and subject to revision on further examination of the injured arm, and the spokesman's failure thus to qualify the representation called for the submission to the jury of the question of conscious or moral fraud. But it was palpably tentative only as to the extent of the temporary disability. A finding for plaintiff on the crucial issue of *scienter* would be the merest surmise and conjecture; and so there was no issue for the jury. *Sivak* v. *New Brunswick,* 122 *N. J. L.* 197.

The fact that defendant's agent later advised the Federal Compensation Commission of the "possibility" of permanent injury did not give rise to a jury question. The misrepresentation charged was not the "impossibility" of a permanent injury. There was no such issue. It is to be observed here that plaintiff ignored several requests of the Compensation Commission to submit to a physical examination.

Plaintiff also invokes the principle that one may be liable for a misrepresentation made without knowledge of its truth or falsity, if it is coupled with an express or implied affirma-

tion that it is known to be true of personal knowledge—citing *Plimpton* v. *Friedberg,* 110 *N. J. L.* 427.

This doctrine is not apropos. The misrepresentation charged here has reference merely to the physician's certification to defendant.

But, if the action of deceit is otherwise maintainable, we do not approve the holding that the proof of injury is insufficient, since the Federal Commission "never passed upon the question of permanent disability, and until it did pass upon and fix the percentage of disability, there was no fixed starting point from which the jury could assess damages," and therefore no proof of the pecuniary loss deemed an essential element of an action of deceit.

The gist of the pleaded cause of action is the loss of the right of compensation under the Federal Act through defendant's fraud and deceit; and fraud is generally actionable if it has resulted in the loss of a right which the law recognizes as of pecuniary value. *Kujek* v. *Goldman, supra.* It is not an action to recover compensation as such under the Federal Act, but rather damages for the deprivation of the statutory right by a fraudulent device. The defendant in an action of deceit is answerable for those consequences, injurious to the plaintiff, which must be presumed to have been within his contemplation at the time of the perpetration of the fraud. *Feldmesser* v. *Lemberger,* 101 *N. J. L.* 184; 41 *A. L. R.* 1153; *Crater* v. *Binninger,* 33 *N. J L.* 513.

There must, of course, be a causal relation between the fraud and the injury; and the damages must also be certain, *i. e.,* such as reasonably can be defined and ascertained. The mere difficulty of estimation of injury does not bar recovery. And it is not requisite that the loss or injury be of a specifically pecuniary character. *Kujek* v. *Goldman, supra;* 23 *Am. Jur.* 994, *et seq.*

Judgment affirmed.

*For affirmance*—The Chancellor, Parker, Case, Donges, Heher, Perskie, Porter, Dear, Wells, Rafferty, Hague, Thompson, Dill, JJ. 13.

*For reversal*—None.