MORITZ NAPPE, PLAINTIFF-APPELLANT AND CROSS-RESPON-
DENT, v. ANSCHELEWITZ, BARR, ANSELL & BONELLO, A
NEW JERSEY PARTNERSHIP, AND RICHARD BONELLO, DE-
FENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND
PETER DENIGRIS, MARIO LATELLA, GEORGE DALEY, MI-
CHAEL J. SANDOMENO, AVENEL BOULEVARD, INC., JOHN
BONELLO, HOWARD C. PETERSON, JAY HARRIS LATIMER,
SAMUEL H. BALLAM, JR., FRED WOLFE, JR., ROBERT D.
BERNHEIM, S. DAVIDSON HERRON, JR., MATTHEW B.
WEINSTEN AND JAMES SMITH, AS TRUSTEES OF FIDELCO
GROWTH INVESTORS, A BUSINESS TRUST EXISTING UN-
DER THE LAWS OF PENNSYLVANIA, MORTGAGE TRUSTS
OF AMERICA, INC., A CALIFORNIA TRUST, DRIFTWOOD
ASSOCIATES, INC., A NEW JERSEY CORPORATION, AND
JERSEY SHORE BANK AND PETER BIEL, DEFENDANTS.

Argued March 5, 1984—Decided July 2, 1984.

38

*Arthur H. Miller* argued the cause for appellant and cross-respondent (*Miller & Littman,* attorneys; *N. Harry Maskin,* on the briefs).

*Theodore W. Geiser* argued the cause for respondents and cross-appellants (*Connell, Foley & Geiser,* attorneys; *Theodore W. Geiser* and *John F. Neary,* of counsel; *John F. Neary,* on the briefs).

The opinion of the Court was delivered by

SCHREIBER, J.

The primary issue raised by this case is whether a cause of action for legal fraud exists in the absence of compensatory damages.[1] A related issue is whether punitive damages may be

---

[1]The terms "actual" and "compensatory" damages are used interchangeably herein to refer to a monetary amount awarded in court to compensate or indemnify a plaintiff for an actual loss or injury suffered as a result of defendant's actions. The words "loss," "injury," and "detriment" are used interchangeably to describe the impairment of rights or interests that the plaintiff has actually suffered.

A loss or injury does not necessarily entitle the victim to an award of compensatory damages. The general rule in this state is that a plaintiff is entitled to

awarded in the absence of a compensatory damage award in an action for legal fraud. These issues arose when the jury awarded plaintiff $2 as nominal damages against the defendant Richard Bonello for fraud in each of two transactions and $50,000 in punitive damages for both frauds, without an allocation of the punitive award to either matter. These claims arose from two separate transactions—one involving plaintiff's loan to furnish a model apartment for a high-rise condominium project, and the other, plaintiff's purchase of an interest in an office building.

The Appellate Division reversed these judgments. It held that compensatory damages are a requisite element of a cause of action for legal fraud, that nominal damages were impermissible, and that punitive damages could not lie in the absence of compensatory damages. It dismissed the claim of fraud in the office building purchase because plaintiff failed, among other things, to prove actual damages. It remanded for a new trial plaintiff's claim of fraud regarding the high-rise condominium loan on the issues of liability, compensatory damages, and punitive damages, holding that the jury could award compensatory damages for loss of interest, contrary to the trial court's instruction, if the jury found that plaintiff was fraudulently induced to make a loan that was interest-free over an extended period of time. 189 *N.J.Super.* 347, 358–60 (1983). Moreover,

---

recover compensatory damages if he has met his burden of proving that he has suffered some loss or injury and if he has given the jury some information from which to estimate the amount of damages, even if he is unable to prove the exact measure of his damages; "the approved practice [in such a situation] is to leave it to the good sense of the jury, as reasonable men, to form, from the evidence, the best estimate that can be made under the circumstances as a basis of compensatory damages * * *." *Jenkins v. Pennsylvania R.R. Co.,* 67 *N.J.L.* 331, 334 (E. & A.1902). *Accord Betenbaugh v. Princeton Hosp.,* 50 *N.J.* 390, 393 (1967) (malpractice action); *Martin v. Bengue, Inc.,* 25 *N.J.* 359, 373 (1957) (negligence action for product defect); 2 *F. Harper & F. James, The Law of Torts* § 25.3, at 1306–07 (1956). On the other hand, a plaintiff would not be entitled to a compensatory damage award for his loss or injury if he failed to come forward with sufficient information to enable the jury to estimate the amount of money that would fairly compensate him for that loss. In such a situation, an award of nominal damages might be appropriate.

the Appellate Division held that the punitive damage determination could not stand because the jury had not allocated the punitive damage award between the two transactions. *Id.* at 357.

We granted plaintiff's petition and defendants' cross-petition for certification, 95 *N.J.* 200 (1983), limited to the following two questions:

A. Is compensable damage a requisite element of legal fraud or may nominal and punitive damages be awarded in the absence of compensatory damages?

B. Does the seller of real property have a duty to disclose to the buyer the existence of "sweetheart" leases?

After considering and examining the record in detail and the oral arguments of counsel, we are satisfied that there existed sharply disputed factual contentions concerning the existence of "sweetheart" leases. That being so, we are of the opinion that certification of the question of "sweetheart" leases was improvidently granted and hereby vacate certification of that issue. We need consider only the high-rise condominium loan.

The jury could reasonably have made the following factual findings on the basis of the evidence adduced at the trial. In May, 1973 plaintiff tentatively agreed to loan Avenel Boulevard, Inc. (Avenel) $200,000 to build and furnish a model condominium for a high-rise apartment complex Avenel was building in Monmouth Beach. Defendant Bonello, the attorney for Avenel and trustee for the disbursement of the construction mortgage funds, told plaintiff that in exchange for the $200,000 loan for the model apartment, plaintiff would receive ten percent of the profits from the entire project. He stated that projected profits were $1,800,000. Bonello had a personal interest in ensuring that his client obtain the loan because a successful completion of the enterprise would have enhanced the value of his right to purchase two of the condominium units at cost.

In June, 1973 plaintiff entered into two written agreements providing that he would loan Avenel $200,000 in exchange for

ten percent of the net profits from the condominium complex. Neither agreement expressly restricted Avenel's use of the $200,000.

Prior to the loan closing, plaintiff had advanced $75,000 to Avenel after its principals represented that Avenel needed that amount for the model apartment's furnishings, which were being delivered C.O.D. Plaintiff's check for $75,000 was not deposited in Avenel's account, but instead was deposited in the account of Driftwood, Inc. (Driftwood), a corporation controlled by Avenel's principals.

Bonello deposited plaintiff's check for the remaining $125,000 of the loan in the trust account of Bonello's law firm, defendant Anschelewitz, Barr, Ansell & Bonello. Within the next two days, Bonello issued five checks disbursing $128,250, including $3,250 previously deposited in the account, in the following manner: $69,500 to a principal of Avenel individually; $50,000 to an unsecured creditor of Avenel; $8,000 in two checks to Molly Company, a theatrical venture; and $750 to his law firm for legal fees. None of the money was used to build and furnish a model apartment.

Plaintiff apparently learned shortly afterwards that construction of the model apartment had stopped because of lack of funds. Plaintiff did not learn of the diversion of his loan until November, 1973. Plaintiff failed to show any loss of profits due to diversion of his $200,000 loan to purposes other than the model apartment or the high-rise project.

The trial court charged the jury that if it found that there was actionable fraud [2] and the plaintiff sustained damages that were not computable, the jury should award nominal damages, such as a dollar. The trial court also charged that if the jury decided to award compensatory or nominal damages, it could

---

[2]The court defined fraud in its traditional legal sense: a knowing false representation by the defendant with intent to deceive, reliance on that representation by the plaintiff, and resultant damage to the plaintiff.

then consider punitive damages. The trial court submitted interrogatories to the jury. In its answers, the jury found that defendant Bonello had committed an actionable fraud with respect to the high-rise condominium investment loan and that plaintiff was entitled to nominal damages of $1. In response to the final interrogatory, the jury made a single award of $50,000 in punitive damages for the frauds in the high-rise condominium loan and the office building sale.

I

The initial question to be considered is whether compensatory damages are an essential element of legal fraud. If compensatory damages are an essential element of the cause of action, the claim must be dismissed despite the fact that the plaintiff has proved all the other elements. On the other hand, if the cause of action is deemed effective even though the plaintiff had not proved his entitlement to compensatory damages, the viability of the cause of action may be the basis of an award of punitive damages. This is because punitive damages may lie provided there is a valid underlying cause of action.

Compensatory damages historically have been considered an essential element of some torts, but not others. It is well established that the plaintiff must show a breach of duty *and* resulting damage to prevail in a negligence action. *See Stanley Co. of Am. v. Hercules Powder Co.*, 16 *N.J.* 295, 315 (1954); *Ochs v. Public Serv. Ry.*, 81 *N.J.L.* 661, 662 (E. & A. 1911); *Muller Fuel Oil Co. v. Insurance Co. of N. Am.*, 95 *N.J.Super.* 564, 579 (App.Div.1967). On the other hand, some torts are actionable without proof of a compensable injury. Thus a trespass on property, whether real or personal, is actionable, irrespective of any appreciable injury. *Spiegel v. Evergreen Cemetery Co.*, 117 *N.J.L.* 90, 93–94 (Sup.Ct.1936); *Wartman v. Swindell*, 54 *N.J.L.* 589, 590 (E. & A. 1892). The general rule is that whenever there is a breach of contract, see cases cited in *G. Harris, Pleading and Practice in New Jersey*

316 n. 33 (rev. ed. 1939), or an invasion of a legal right, the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages. *Spiegel v. Evergreen Cemetery Co., supra,* 117 *N.J.L.* at 93.

The difference in the treatment of these torts is attributable to the historical distinction between the common-law writs of trespass and trespass on the case. In early English common law, both writs were available to redress tortious harm. Trespass, as distinguished from trespass on the case, was considered quasi-criminal in nature and was the remedy for forcible, direct, and immediate injuries to persons or property. It had a basic criminal character since it was directed at breaches of the King's peace and it was on this ground that the royal courts assumed jurisdiction. Damages were first awarded to the injured plaintiff as an incidental aspect of the criminal proceeding. 1 *F. Harper & F. James, The Law of Torts* § 1.3, at 7–8 (1956); *W. Prosser, Handbook on the Law of Torts* § 7, at 28–29 (4th ed. 1971). Proof of actual damage was not required because invasion of the plaintiff's rights was regarded as the tort in itself. *W. Prosser, supra,* § 7, at 29.

Trespass on the case, on the other hand, developed as a supplement to trespass to afford a remedy for injury resulting indirectly. The classic illustration of the difference involves that of a log thrown onto a highway. If a person were struck by the log, trespass would lie. If he fell over the log as it lay on the road, the action would be on the case. *Leame v. Bray,* 102 *Eng.Rep.* 724, 726 (1803); *Reynolds v. Clarke,* 92 *Eng.Rep.* 410, 413 (1725). The distinction was not between intentional and negligent conduct, but was based instead on the causal sequence and the directness of the harm. In trespass on the case there could ordinarily be no liability unless actual damage was proven. 2 *W. Wait, Actions and Defenses* 99–102 (1877); *see also W. Prosser, supra,* § 7, at 28–30.

For the most part, these procedural distinctions between trespass and trespass on the case have disappeared. However, a vestige of the distinction between the two has remained with respect to the requirement of proving actual damage. As Dean Prosser has observed: "[W]hether such damage is essential to the existence of a cause of action for a particular tort may depend very largely upon its ancestry in terms of the old procedure." *W. Prosser, supra,* § 7, at 30; *see* 1 *F. Harper & F. James, supra,* § 1.3, at 7–11. Some "case" actions that have continued to require proof of actual damage are slander of title, disparagement of goods, and slander that is not *per se. C. McCormick, Handbook on the Law of Damages* § 22, at 89 (1935). However, in other actions on the case, courts have not adhered to the common-law distinction and have sustained actions in the absence of proof of compensatory damage. These include libel, slander *per se,* nuisance, and malicious prosecution. *Id.* at 90.

We have not hesitated to modify the common law when it is no longer fair and equitable or does not serve a useful purpose. Justice Jacobs, in striking down a common-law rule requiring unanimity of arbitrators' awards, stated in *La Stella v. Garcia Estates,* 66 *N.J.* 297, 305 (1975):

> Whatever validity the common law rule may originally have had, it is clear to us that it has no proper place in current times. This Court has not hesitated to reject common law doctrines which have outlived their usefulness and which no longer serve justice or the interests of society. See *Collopy v. Newark Eye and Ear Infirmary,* 27 *N.J.* 29 (1958); *Smith v. Brennan,* 31 *N.J.* 353 (1960); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N.J.* 358 (1960); *France v. A.P.A. Transport Corp.,* 56 *N.J.* 500 (1970).

*See also Canino v. New York News, Inc.,* 96 *N.J.* 189, 192 (1984); *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 220 (1979).

■ Although distinctions based on common-law writs may once have been appropriate, the requirement of actual damage to sustain a cause of action for intentional torts no longer serves a useful purpose, at least where a victim of an intentional wrong has suffered some loss, detriment, or injury but is

unable to prove that he is entitled to compensatory damages. His rights have been invaded and he should be entitled to vindication in an award of nominal damages.[3] Indeed, it is difficult to justify permitting nominal damages in a trespass action and not in a case of a wilful and malicious intentional tort. We hold, therefore, that compensatory damages are not an essential element of an intentional tort committed wilfully and without justification when there is some loss, detriment, or injury, and that nominal damages may be awarded in such cases in the absence of compensatory damages.

## II

The three basic types of legal damages are compensatory, nominal, and punitive. Compensatory damages are designed to compensate a plaintiff for an actual injury or loss. Nominal damages, unlike compensatory damages, do not attempt to compensate the plaintiff for an actual loss. *D. Dobbs, Handbook on the Law of Remedies* § 3.1, at 135, and § 3.8, at 191 (1973). Rather, they are a trivial amount "awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage * * *. The award of nominal damages is made as a judicial declaration that the plaintiff's right has been violated." *C. McCormick, supra*, § 20, at 85. Finally, punitive damages are awarded as punishment or deterrence for particularly egregious conduct. *Leimgruber v. Claridge Assocs.*, 73 *N.J.* 450, 454 (1977); *DiGiovanni v. Pessel*, 55 *N.J.* 188, 190 (1970).

As early as 1791, this Court recognized that damages may appropriately be awarded "for *example's* sake, to prevent such offences in future * * * [and] as would mark [the jury's] disapprobation * * *." *Coryell v. Colbaugh*, 1 *N.J.L.* 90, 91 (Sup.Ct.) (emphasis in original). Subsequent cases reaffirmed

---

[3]Being a prevailing party may entitle the plaintiff to taxed costs. *See R.* 4:42–8(a).

our commitment that punitive or exemplary damages can be awarded to punish aggravated misconduct by the defendant and to deter him and others from repeating it. *E.g., Leimgruber, supra,* 73 *N.J.* at 454; *DiGiovanni v. Pessel, supra,* 55 *N.J.* at 190–91; *Berg v. Reaction Motors Div.,* 37 *N.J.* 396, 413–14 (1962); *Magee v. Holland,* 27 *N.J.L.* 86, 97–98 (Sup.Ct. 1858); *Cabakov v. Thatcher,* 37 *N.J.Super.* 249, 259 (App.Div. 1955). As Chief Justice Gummere observed many years ago in *Dreimuller v. Rogow,* 93 *N.J.L.* 1, 3 (Sup.Ct.1919):

> The purpose of the award being to punish the wrongdoer, no reason is perceived for holding that the power to inflict punishment is dependent to any extent upon the form of the action by which the injured party seeks redress for the wrong done him by the malicious or wanton trespass committed against his property.

 To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another. *DiGiovanni v. Pessel, supra,* 55 *N.J.* at 191. In *Berg v. Reaction Motors Div., supra,* 37 *N.J.* at 414, this Court said:

> Professor McCormick suggests that in order to satisfy the requirement of willfulness or wantonness there must be a "positive element of conscious wrongdoing." See *McCormick, supra,* at *p.* 280. Our cases indicate that the requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences. See *King v. Patrylow,* 15 *N.J. Super.* 429, 433 *(App.Div.* 1951); *cf. Krauth v. Israel Geller and Buckingham Homes, Inc.,* 31 *N.J.* 270, 277 (1960); *Egan v. Erie R. Co.,* 29 *N.J.* 243, 255 (1959); *Tidewater Oil Co. v. Camden Securities Co.,* 49 *N.J. Super.* 155, 164 *(Ch.Div.* 1958). See also *Staub v. Public Service Railway Co.,* 97 *N.J.L.* 297, 300 *(E. & A.* 1922).

The key to the right to punitive damages is the wrongfulness of the intentional act. "The right to award exemplary damages primarily rests upon the single ground—wrongful motive * * *." *Dreimuller v. Rogow, supra,* 93 *N.J.L.* at 3; *see also Trainer v. Wolff,* 58 *N.J.L.* 381 (E. & A. 1895). Or, as Dean Prosser has said:

> Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton. Lacking this element, mere negligence, however "gross," is generally held not to be enough. [*DiGiovanni v. Pessel, supra,* 55 *N.J.* at 190 (quoting *W. Prosser, Handbook on the Law of Torts* § 2, at 9–10 (2d ed. 1955).]

Because of the fortuitous circumstance that an injured plaintiff failed to prove compensatory damages, the defendant should not be freed of responsibility for aggravated misconduct. People should not be able with impunity to trench wilfully upon a right. Moreover, it is especially fitting to allow punitive damages for actions such as legal fraud, since intent rather than mere negligence is the requisite state of mind.

The punitive award is not required to have a fixed proportional relationship to the amount of compensatory damages. Instead, to further the punishment and deterrent goals in assessing punitive damages,

> the trier of fact should take into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of the damages. [*Leimgruber, supra,* 73 *N.J.* at 456.]

Our courts have held that punitive damages could be awarded for egregious conduct in the absence of compensatory damages. *See, e.g., Singer Shop-Rite, Inc. v. Rangel,* 174 *N.J. Super.* 442, 448 (App.Div.1980) (punitive damages upheld despite lack of compensatory award for assault and battery), certif. denied, 85 *N.J.* 148 (1980); *Winkler v. Hartford Accident & Indem. Co.,* 66 *N.J.Super.* 22, 29 (App.Div.) (the better view is to allow punitive damages in action for conversion even if plaintiff is unable to prove compensatory damages), certif. denied, 34 *N.J.* 581 (1961); *Barber v. Hohl,* 40 *N.J.Super.* 526, 534–35 (App. Div.1956) (affirming punitive damage award for removal of lateral support to plaintiff's land but remanding for retrial for amount, if any, of compensatory damages); *see also Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.,* 158 *N.J.Super.* 455, 485–87 (Ch.Div.1978) ("[W]here a legal right has been violated, the

law will infer nominal damages even in the absence of actual loss [and] punitive damages may be awarded.") (citations omitted), supp. 162 *N.J.Super.* 114 (Ch.Div.1978), aff'd on other grounds 172 *N.J.Super.* 196 (App.Div.1980), aff'd, 86 *N.J.* 453 (1981); *cf. O'Connor v. Harms,* 111 *N.J.Super.* 22, 29–30 (App.Div.) (recognizing that some authorities hold that nominal damages can support an award of punitive damages, but striking down punitive award because no nominal damages awarded), certif. denied, 57 *N.J.* 137 (1970). *But see* Annot., 17 *A.L.R.*2d 527 (1951) (majority of jurisdictions require an award of compensatory damages as predicate to punitive damages).

It should be noted that the punishment aspect is for the private wrong to the individual, rather than the wrong to the public. It is settled that if the wrong constitutes a criminal act, the punitive damage award may effectively supplement the criminal law in punishing the defendant. *Morris v. MacNab,* 25 *N.J.* 271, 281 (1957); *see* 4 *Restatement (Second) of Torts* § 908 comment a (1979).

The principle that punitive damages may be awarded in the absence of compensatory damages in actions for intentional torts furthers desirable policy goals. "[T]he nominal-damage cases are peculiarly appropriate for exemplary damages. If no compensable harm is done even though the defendant's conduct is very wrongful, the normal admonitory function of tort law is not brought into play unless exemplary damages are assessed." Note, "Exemplary Damages in the Law of Torts," 70 *Harv.L. Rev.* 517, 529 (1957).

We therefore hold that punitive damages may be assessed in an action for an intentional tort involving egregious conduct whether or not compensatory damages are awarded, at least where some injury, loss, or detriment to the plaintiff has occurred.

### III .

Legal fraud has generally been defined as "a material representation of a presently existing or past fact, made with knowl-

edge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Center v. Whale*, 86 *N.J.* 619, 624 (1981); *see also Louis Schlesinger Co. v. Wilson*, 22 *N.J.* 576, 585–86 (1956); *Foont-Freedenfeld Corp. v. Electro-Protective Corp.*, 126 *N.J.Super.* 254, 257 (App.Div.1973), aff'd, 64 *N.J.* 197 (1974).

The majority rule of law is that actual loss or injury and compensatory damages are necessary to maintain a cause of action for legal fraud and that, in the absence of an award of compensatory damages, a cause of action has not been made out and nominal and punitive damages may not lie. *See, e.g., Day v. Avery*, 548 *F.*2d 1018, 1029 (D.C.Cir.1976), *cert.* denied, 431 *U.S.* 908, 97 *S.Ct.* 1706, 52 *L.Ed.*2d 394 (1977); *Monteleone v. Trail Pontiac, Inc.*, 395 *So.*2d 1003, 1004 (Ala.Civ.App.1980), writ denied, 395 *So.*2d 1005 (Ala.1981); *Beik v. Thorsen*, 169 *Conn.* 593, 594, 363 *A.*2d 1030, 1031 (1975); *Zeliff v. Sabatino*, 15 *N.J.* 70, 77 (1954) (Burling, J., dissenting); *Mumphord v. First Victoria Nat'l Bank*, 605 *S.W.*2d 701, 704–05 (Tex.Civ. App.1980); *D. Dobbs, supra*, § 3.8, at 191–93; *W. Prosser, supra*, § 110, at 731–32; 37 *Am.Jur.*2d, "Fraud and Deceit" § 283, at 377–79 (1968). Our research has not disclosed, and counsel have not brought to our attention, any New Jersey decision holding that nominal damages may not be awarded in a case of legal fraud. However, that such has been our rule might be inferred from the language in some opinions that include in the definition of legal fraud not only reliance but also resultant injury or detriment. *See, e.g., Jewish Center v. Whale, supra*, 86 *N.J.* at 624; *Racanati v. Black Diamond Stevedoring Co.*, 132 *N.J.L.* 250, 251–53 (E. & A. 1944). This rule is the product of the historical concept that actual damages were an essential ingredient of a cause of action based on a trespass on the case.

In the case of legal fraud the plaintiff, as we have seen, in addition to proving damage, must prove scienter, meaning knowledge of the falsity of the representation, with an intent

that the other party rely thereon. Such fraudulent conduct constitutes unfair dealing whether or not actual damages are shown. Even if the person relying on the falsehood were unable to establish actual damages, he should be entitled to vindicate his rights through an award of nominal damages and in appropriate cases to punish the defendant through an award of punitive damages.

Courts in several other states have refused to be constrained by the outmoded common-law requirement and have sustained actions for legal fraud when the plaintiff's injury was not compensable. *See, e.g., Pihakis v. Cottrell*, 286 *Ala.* 579, 243 *So.*2d 685 (1971); *O'Brien v. Small*, 101 *Ohio App.* 408, 122 *N.E.*2d 701 (1954); *Beavers v. Lamplighters Realty*, 556 *P.*2d 1328 (Okla.Ct.App.1976); *Sands v. Forrest*, 290 *Pa.Super.* 48, 434 *A.*2d 122 (1981); *Collier v. Bankston-Hall Motors*, 267 *S.W.*2d 898 (Tex.Civ.App.1954); *see also* 37 *C.J.S., "Fraud"* § 139, at 465 (1943). Some courts have also determined that punitive damages may be awarded for fraud when there has been some loss, injury, or detriment, even if the plaintiff does not recover any compensatory damages. *Pihakis v. Cottrell, supra*, 286 *Ala.* at 586, 243 *So.*2d at 691–92; *Harris v. Wagshal*, 343 *A.*2d 283, 288 n.13 (D.C.1975); *United Sec. Corp. v. Franklin*, 180 *A.*2d 505, 511 (D.C.1962); *Beavers v. Lamplighters Realty, supra*, 556 *P.*2d 1328; *cf. Klein v. Spear, Leeds & Kellogg*, 306 *F.Supp.* 743 (S.D.N.Y.1969) (actual damages must be shown but not necessarily awarded). *But see Day v. Avery, supra*, 548 *F.*2d at 1029–30. We believe this is the sounder position. Our previous holding that nominal and punitive damages may be appropriately assessed in certain circumstances for intentional torts in the absence of a compensatory damage award is fully applicable in actions for legal fraud.

## IV

In the present case, the trial court permitted the jury to award plaintiff nominal and punitive damages without compensatory damages. The trial court instructed the jury:

> [I]f you find that there was actionable conduct [as previously defined by the court] on the part of the defendant and you reasonably believe that he sustained damages, but they are not computable, as I have already indicated [excluding consideration of lost interest on the high-rise loan transaction], but you feel that there has been sufficient evidence that he was damaged, you should in light of the questions I would submit if you so find, enter an award of nominal damages.

Under these instructions, a jury would need to find that the plaintiff suffered some harm as a result of his reliance on the defendant's fraudulent conduct, even if he were unable to prove that he was entitled to compensatory damages. Here, the jury could have inferred that the defendant's diversion of plaintiff's funds from the high-rise project delayed its construction and thereby reduced the plaintiff's profits, although by an uncertain amount. Therefore, these instructions were correct in view of our holding that compensatory damage is not a requisite element of legal fraud.

In the absence of any other issues, we would reinstate the jury's finding of liability and nominal damages for fraud in the high-rise condominium claim. However, the Appellate Division had remanded that cause for a new trial on liability and on plaintiff's claim for compensatory damages predicated on loss of interest with respect to that loan. We did not certify the propriety of those issues and do not pass on them. Under these circumstances, the trial on remand should also include plaintiff's claim for punitive damages.

Reversed in part and affirmed in part.

O'HERN, J., concurring.

I agree with the majority that the award for punitive damages entered below was properly set aside. I disagree that we should use the fiction of nominal damages to decide whether such exemplary damages may be awarded for an intentional injury in tort.

## I.

Fictions have traditionally served the common law's drive to achieve justice. But a direct statement of the desirable result without figmental veneer would

do as well, and indeed be more serviceable, for fictions tend to intrude into situations for which they were not invented. [*Michaels v. Brookchester, Inc.*, 26 *N.J.* 379, 385 (1958) (Weintraub, C.J.) 1.]

A direct statement of the desired result would call for a holding that punitive damages may be awarded without compensatory damages. In reality, nominal damages are not damages. Whatever common law function they once served seems irrelevant to what we must decide—what is the appropriate function of punitive damages in a developed legal system.

We begin by recognizing that the purposes of punitive damages are obscured by historical assumptions that are largely irrelevant to contemporary legal process. Early decisions conceded that "one purpose of large awards was to prevent dueling." Note, *Exemplary Damages in the Law of Torts*, 70 *Harv.L.Rev.* 517, 522 (1957). Tort law developed as an adjunct to criminal law and it was natural to include punishment and deterrence among its objectives. 1 F. Harper & F. James, *The Law of Torts*, § 1.3, at 8 (1956). These concepts of private revenge and public punishment—developed in a more primitive society that sought to avoid trial by combat—are not particularly instructive today. Yet our cases have repeated these themes. The most frequently stated reasons for allowing exemplary damages are punishment and deterrence:

Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future. *Fisher v. Volz*, 496 *F.*2d 333, 347 (3d Cir.1974); *DiGiovanni v. Pessel*, 55 *N.J.* 188, 190 (1970); *Berg v. Reaction Motors Div.*, 37 *N.J.* 396, 412–13 (1962); *Trainer v. Wolff*, 58

1 Bentham poured ridicule on legal fictions wherever he met them. (See Maine's Ancient Law, London, 1894, p. 27.)

Pound, in his great work on jurisprudence says that while fictions have played an important part in legal history, "we must not forget that they are a clumsy device appropriate only to periods of growth in a partially developed political organization of society in which legislation on any large scale is not possible. They are not suited to later times and developed systems. * * * " [*Louisville & Nashville R.R. Co. v. Public Serv. Comm'n of Tenn.*, 389 *F.*2d 247, 250 n. 1 (6th Cir.1968).]

N.J.L. 381, 382 (E. & A.1895); *Belinski v. Goodman*, 139 *N.J.Super.* 351, 359 (App.Div.1976); *Cabakov v. Thatcher*, 37 *N.J.Super.* 249, 259 (App.Div.1955); *Hulbert v. Arnold*, 83 *N.J.L.* 114, 117 (Sup.Ct.1912) * * *. [*Leimgruber v. Claridge Assocs., Ltd.*, 73 *N.J.* 450, 454 (1977).]

These are obviously penal purposes and should cause us to focus clearly on precisely what it is that we wish to punish or deter. If the awarding of nominal damages means the conduct has caused no real harm, we must question why we should seek to punish or deter it.

One answer is that legal harm is not always measurable in money. The most obvious example is the insulting battery or offensive touch. To say that damages are presumed is only to say that the victim has been injured.

Although it is true that some American jurisdictions hold that punitive damages can be awarded on the basis of nominal damages, *see* Annot., 17 *A.L.R.*2d 527 at § 6 (1951); 22 *Am.Jur.* 2d *Damages* § 242 (1965), I believe that the cases are based upon an actual legal injury, that is, otherwise compensable harm, to the victim. *See Fisher v. Volz*, 496 *F.*2d 333, 346 & n. 25 (3d Cir.1974) (unauthorized entry into homes to execute arrest warrant; punitive damages may be awarded without also awarding compensatory damages); *Reynolds v. Pegler*, 223 *F.* 2d 429 (2d Cir.), *cert.* denied, 350 *U.S.* 846, 76 *S.Ct.* 80, 100 *L.Ed.* 754 (1955) (columnist charged that fellow journalist cavorted in the nude, was a war profiteer, and four-flusher; nominal damages of $1.00 supported punitive award of $175,-000); *Sterling Drug, Inc. v. Benatar*, 99 *Cal.App.*2d 393, 221 *P.*2d 965, 970 (1950) (deliberate sale of products below agreed resale price; nominal damages of $1.00 will sustain punitive damage award when "actual damages have been sustained, the extent of which cannot be determined"); *Lassitter v. International Union of Operating Eng'rs.*, 349 So.2d 622, 626 (Fla. 1977) (supervisor victim of union violence; "nominal" damages are "actual" damages for purpose of supporting an award for punitive damages because "establishment of liability for a breach of duty will support an otherwise valid punitive damage

award even in the absence of financial loss for which compensatory damages would be appropriate"); *Kennedy v. Thomsen,* 320 *N.W.*2d 657, 659 (Iowa App.1982) (claim for punitive damages may be added to action for rescission; confidential agent whose undue influence induced transaction could be held liable for punitive damages: "[T]homsen had sustained actual damage, but he attempted to be made whole by a claim for rescission rather than a claim for damages"); *International Brotherhood of Elec. Workers, Local 1805 v. Mayo,* 281 *Md.* 475, 379 *A.*2d 1223 (1977) (union newspaper charged supervisor falsified timecard; plaintiff can recover punitive damages without proof of actual damages; actual injury not confined to out-of-pocket loss); *Snodgrass v. Headco Industries, Inc.,* 640 *S.W.*2d 147, 156–58 (Mo.App.1982) (nominal damages of $3.00 sustained punitive damages of $185,000 for libel and slander, including statements to his girl friend and a credit company that plaintiff had raped a secretary, stolen from the company, and been involved in a murder); *Russell v. Truitt,* 554 *S.W.*2d 948, 955–56 (Tex.Ct.Civ.App.1977) (exemplary damages may be awarded as incidental to equitable relief; joint venturers fraudulently induced investment and breached fiduciary duty). *See also Vratsenes v. N.H. Auto, Inc.,* 112 *N.H.* 71, 289 *A.*2d 66, 68 (1972) ("[N]o damages other than compensatory are to be awarded. However, when the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances").

Our cases have used the language that compensatory damages are not necessary to support an award of punitive damages. *See Barber v. Hohl,* 40 *N.J.Super.* 526, 535 (App.Div. 1956) ("a wrong is established" by removing lateral support for land, "whatever the lack of showing as to the loss in pecuniary terms"). The source cases for the principle, however, demonstrate the kind of real injuries that shaped early tort law. In *Hulbert v. Arnold,* 83 *N.J.L.* 114 (Sup.Ct.1912), a teacher in a rural school district was described as a "whore" and worse by a school board member. In such a case a court could well find

that punitive damages for the real injury are not to be measured by the victim's economic loss. *Spiegel v. Evergreen Cemetery Co.*, 117 *N.J.L.* 90 (Sup.Ct.1936), concerned awarding damages for mental · injury for the negligent burial of the plaintiff's father. Recognizing that liability for mental or emotional distress would have to be based on an intentional wrong, not a negligent act, the court invoked by analogy the principle that "wherever there is a breach of contract, or the invasion of a legal right, the law ordinarily infers that damage has ensued. And, in the absence of actual loss, the law vindicates the right by awarding nominal damages." [2] *Id.* at 96–97. *See also Magee v. Holland*, 27 *N.J.L.* 86 (Sup.Ct.1858) (when children under age of six were kidnapped by brother-in-law at wife's bidding, father could recover punitive damages for injury to his feelings; loss of children's services supported action).

Such cases have been categorized as involving an outrageous affront to the sensibilities of society:

> The reported cases from roughly the first quarter of the seventeenth century through the first quarter of the nineteenth century, in which juries awarded damages in large amounts unrelated to tangible loss, fell into a variety of legal categories. They included cases of slander, seduction, assault and battery in humiliating circumstances, criminal conversation, malicious prosecution, illegal intrusion into private dwellings and seizure of private papers, trespass onto

---

[2] At common law there may have been important reasons to enter such a judgment either to establish title or otherwise to determine the rights of the parties. *See New Jersey School & Church Furniture Co. v. Board of Educ. of Somerville*, 58 *N.J.L.* 646, 648 (E. & A.1896) ("When we consider that the doctrine of *res judicata*, or even the title to property, may rest upon a judgment for nominal damages as well as upon a more substantial redress, it is evident that the right to a verdict is not controlled by the incidental question of the amount of damages to be recovered."). *See also* 1 T. Sedgwick, *A Treatise on the Measure of Damages* § 99, at 168 (9th ed. 1912) ("[A] verdict and judgment for the smallest amount is as effectual as any sum, however large; for it establishes the fact of the plaintiff's title. And in the common case of trespass to lands, the main object usually being to determine the right, this principle becomes very important"). The Court downplays this historical connection when it says "it is difficult to justify permitting nominal damages in a trespass action and not in a case of a wilful and malicious intentional tort." *Ante* at 48.

private land in an offensive manner, and false imprisonment. Diverse as they may have been, all of these cases share one common attribute: they involved acts that resulted in affronts to the honor of the victims. The defendants' acts were insults that were likely to provoke reactions of outrage. [Ellis, *Fairness and Efficiency in the Law of Punitive Damages*, 56 *S.Cal.L.Rev.* 1, 14–15 (1982) (footnotes omitted).]

The defendant's actions evoked a compelling desire for redress or satisfaction on the part of the victim; exemplary damages avoided the disorders caused by feuds and more extreme forms of self-help. One of New Jersey's earliest cases, *Coryell v. Colbaugh*, 1 *N.J.L.* 90, 91 (Sup.Ct.1791), viewed a putative father's breach of contract to marry as "of the most atrocious and dishonorable nature, and called for exemplary damages." One commentator suggests that the application of punitive damages in the products liability field is consistent with this principle since the "Kantian notion of the inherent value of the human being" is sacrificed to the interests of production line economics. *Symposium Discussion*, 56 *S.Cal.L.Rev.* 155, 160 (1982).

The United States Supreme Court has been struggling to develop organizing principles. In the area of libel law, it has apparently tied punitive and nominal damage awards for private individuals to the *New York Times* "actual malice" standard. *Gertz v. Robert Welch, Inc.*, 418 *U.S.* 323, 348–49, 94 *S.Ct.* 2997, 3011, 41 *L.Ed.*2d 789, 810 (1974). In the civil rights field, the Court, in a 5–4 decision, allowed punitive damages in § 1983 actions when the defendant's conduct was motivated by evil intent or a reckless indifference to the plaintiff's constitutional rights. *Smith v. Wade*, 461 *U.S.* 30, 103 *S.Ct.* 1625, 75 *L.Ed.*2d 632 (1983); *but cf. City of Newport v. Fact Concerts, Inc.*, 453 *U.S.* 247, 101 *S.Ct.* 2748, 69 *L.Ed.*2d 616 (1981) (municipalities immune from punitive damages under § 1983). When a former agent breached his contract with the CIA, resulting in irreparable harm to the government, the Court found the only sufficient redress was a constructive trust on his book profits:

No one disputes that the actual damages attributable to a publication such as Snepp's generally are unquantifiable. Nominal damages are a hollow alternative, certain to deter no one. The punitive damages recoverable after a jury trial are speculative and unusual. Even if recovered, they may bear no relation to either the Government's irreparable loss or Snepp's unjust gain. [*Snepp v. United States,* 444 *U.S.* 507, 514, 100 *S.Ct.* 763, 768, 62 *L.Ed.*2d 704, 711 (1980).]

Finally, in *Silkwood v. Kerr-McGee Corp.,* —— *U.S.* ——, 104 *S.Ct.* 615, 78 *L.Ed.*2d 443 (1984), the Court, again by a 5–4 vote, held that punitive damages under state law could be recovered for violation of nuclear energy regulations absent proof of injury to Karen Silkwood.

## II.

Applying the dimly perceived purposes of punitive damages to the contemporary economic facts of this case is not easy. The question should not be whether punitive damages may be awarded in the absence of compensatory damages, but rather whether commercial misrepresentation that does not result in proven economic loss is a legal injury such as should invoke the sanction of punitive damages. The case is made complex by its factual pattern. The evidence before us is that plaintiff made an interest-free loan to the development enterprise represented by the defendant law firm in return for 10% of the profits of the project. Plaintiff was unable to prove that the diversion of enterprise property caused a loss in value of his investment.

It has generally been accepted that to sustain an action for misrepresentation a claimant must have suffered damages, but this statement seems to mean nothing more than that the claimant must have received something different from what was bargained for. *See* McCleary, *Damage as Requisite to Rescission for Misrepresentation,* 36 *Mich.L.Rev.* 1, 227 (1937), *cited in* W. Prosser, J. Wade and V. Schwartz, *Cases and Materials on Torts* 952–53 (6th ed.1976). To support an award of punitive damages, I would require, at a minimum, that the jury find that as a result of the alleged misrepresentation, the plaintiff did not get what he or she bargained for.

Beyond that, I would give greater structure to the context within which a jury should assess punitive damages. Bearing in mind that the functions that we have assigned to them are penal in nature, that is, punishment and deterrence of the defendant, we should insist upon strictly structured standards as we do for such punishment in the criminal sphere, *see State v. Roth*, 95 *N.J.* 334 (1984), and not leave juries without any direction in the civil field. Perhaps juries should be advised whether criminal sanctions were pursued (as they were in this case against certain defendants), so that the juries may determine whether the purposes of punishment and deterrence of this kind of activity are more properly left to penal enforcement agencies using standards dictated by the Legislature. The jury should be instructed about the purposes of the doctrine, that it is not to give plaintiffs a windfall; that to recover punitive damages for fraud and deceit, plaintiff must show fraud that invokes malice, willfulness or wanton and reckless disregard of the rights of others.[3]

As to the measure of damages, I believe that we should define the role juries are to fulfill. Current commentators are struggling with the development of economic models for punitive damages. *See, e.g., Symposium: Punitive Damages*, 56 *S.Cal.L.Rev.* 1–203 (1982). The inability or unwillingness of courts to deal with standards for punitive damages is a residue

---

[3]The majority says "it is especially fitting to allow punitive damage for actions such as legal fraud, since intent rather than mere negligence is the requisite state of mind." *Ante* at 50. But the Court shies away from adopting a rule that in cases of fraud, punitive damages may always be awarded. That is, is fraud one of those torts "like malicious prosecution that require a particular antisocial state of mind, [so that] the improper motive of the tortfeasor is both a necessary element in the cause of action and a reason for awarding punitive damages[?]" Restatement (Second) of Torts § 908, comment c (1977). *See Smith v. Wade*, 461 *U.S.* 30, 53, 103 *S.Ct.* 1625, 1638–39, 75 *L.Ed.*2d 632, 649–50 (1983), and cases cited therein. Whether the threshold for punitive damages should be identical to that for compensatory damages is exactly the type of question we should resolve and not leave to the discretion of juries.

of history. At early common law, parties who submitted their disputes to juries were bound by the jury's findings; there was no measure of damages. It was only "at comparatively a recent period that the jury has relinquished its control over actions even of contract, and that any approach has been made to a fixed and legal measure of damages." T. Sedgwick, *A Treatise on the Measure of Damages* 214 (1847), *quoted in* M. Horwitz, *The Transformation of American Law, 1780–1860*, at 83 (1977). Only by degrees was the principle recognized that the amount of compensation was to be regulated by the direction of the court and that the jury could not substitute its "vague and arbitrary discretion for the rules which the law lays down." *Id.* "The doctrine of exemplary damages is thus seen to have originated in a survival in this limited class of cases of the old arbitrary power of the jury." 1 T. Sedgwick, *A Treatise on the Measure of Damages* § 349, at 689 (9th Ed.1912).[4]

I am not suggesting that we can devise a system of formalistic rules that will narrowly confine awards for damages in such cases, but I am suggesting that we should not abandon the effort to give greater structure to the concepts of punitive damages. The idea that the amount of damages is measured by the wealth of the defendant is not consistent with what we have come to believe is the proper measure of damages in criminal law, that is, that the punishment should fit the crime and not the criminal. Rejection of a concept of proportionality is also, I think, unfortunate. *See Leimgruber v. Claridge Associates*, 73 *N.J.* 450, 457 (1977) (bearing in mind that what the Court was talking about in *Leimgruber* was $16,550 in

---

[4]Nearly a century ago, a New Jersey court wrote of punitive damages:
Without stopping to review the history of this class of so-called damages, it is sufficient to say that the right to award them rests primarily upon the single ground—wrongful motive. The engrafting of this notion on to personal suits has resulted in an anomalous rule, the doctrine of punitive damages being a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. [*Haines v. Schultz*, 50 *N.J.L.* 481, 484 (Sup.Ct.1888).]

punitive damages for $1700 worth of destroyed trees, not an outrageously disproportionate sum). We should take account of the Legislature's use of treble damages as a frequently invoked method of disapproving egregious conduct. *See, e.g., N.J.S.A.* 56:9–12(a) (antitrust violation); *N.J.S.A.* 56:4–2 (unfair competition); *N.J.S.A.* 56:8–19 (consumer fraud); *N.J.S.A.* 2A:18–61.6 (wrongful removal of tenant); *N.J.S.A.* 46:8–21.1 (double recovery for failure to return tenant's deposit). These statutes also allow recovery of attorney's fees and costs. *See* 42 *U.S.C.A.* § 1988 (recovery of attorney's fees in civil rights cases); *N.J.S.A.* 10:5–27.1 (same); *cf. Fed.R.Civ.P.* 11 (fees and costs can be assessed against attorney or party for signing paper in violation of rule).

Another factor that is frequently mentioned to give shape to the doctrine is that absent punitive damages, some claimants will in fact be undercompensated. Ellis, *supra,* 56 *S.Cal.L. Rev.,* at 26–33.[5] Finally, we should rethink the question of whether punitive damages may be insured against. *See* Morrissy, *Punitive Damages—Insurability,* 1981 *Trial Law. Guide* 257.

---

[5]We cannot ignore the fact that punitive damages are not welcome everywhere. As Justice Rehnquist reports:

> [A] significant number of American jurisdictions refuse to condone punitive damage awards. See, e.g., *Killibrew [Killebrew] v Abbott Laboratories,* 359 *So* 2d 1275 (La 1978); *Burt v Advertiser Newspaper Co.,* 154 *Mass* 238 [28 *N.E.* 1] (1891) (Holmes, J.): *Miller v Kingsley* [194 *Neb.* 123], 230 *NW* 2d 472, 474 (Neb 1975); *Vratsenes v New Hampshire Auto, Inc.* [112 *N.H.* 71], 289 *A* 2d 66, 68 (NH 1972); *Pererra v International Basic Economic Corp.,* 95 *PRR* 28 (1967); *Maki v Aluminum Building Products* [73 *Wash.*2d 23], 436 *P* 2d 186, 187 (Wash 1968). See also *Murphy v Hobbs,* 7 *Colo* 541 [5 *P.* 119] (1884) (no punitive damages at common law). Other jurisdictions limit the amount of punitive damages that may be awarded, for example, to the plaintiff's attorney's fees, see *Triangle Sheer Metal Works, Inc. v. Silver* [154 *Conn.* 116], 222 *A* 2d 220 ([Conn.] 1966), or otherwise, *Riggs v Fremont Insurance Co.* [85 *Mich.App.* 203], 270 *NW* 2d 654 (Mich App 1978). [*Smith v. Wade,* 461 *U.S.* at 60, 103 *S.Ct.* at 1642, 75 *L.Ed.*2d at 653 (Rehnquist, J., dissenting).]

In short, I think that we must more carefully define the purposes of punitive damages and develop standards to guide the discretion of juries in discharge of this extraordinary function of punishing and deterring individuals.

O'HERN, J., concurring in the result.

*For reversal in part, affirmance in part* —Justices CLIFFORD, SCHREIBER, HANDLER, O'HERN and GARIBALDI —5.